THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM E. HOPE, Defendant-Appellant.

First District (5th Division)    No. 77-308

Opinion filed February 16, 1979.

Ralph Ruebner and Patricia Unsinn, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Kenneth T. McCurry, and Michael R. Sherwin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant was convicted of theft (Ill. Rev. Stat. 1975, ch. 38, par. 16—1) and possession of a stolen vehicle (Ill. Rev. Stat. 1975, ch. 95½, par. 4—103(a)). He was sentenced to concurrent terms of one to four years for theft and one to three years for possession of a stolen vehicle. On appeal he contends that he was not proven guilty beyond a reasonable doubt and that the trial court erred in: (1) admitting a business record without requiring a proper foundation; (2) admitting

hearsay testimony; (3) allowing the State to cross-examine a defense witness regarding a prior inconsistent statement without presenting rebuttal evidence where the witness denied having made the statement; (4) failing to hold a hearing prior to imposing sentence; (5) imposing sentence prior to disposing of a post-trial motion; and (6) finding defendant guilty of a lesser included offense.

The following pertinent evidence was adduced at trial.

*For the State*

*Cary B. Seiderman, Assistant General Manager of Nortown Oldsmobile, Inc.*

Nortown, which is located at 6501 N. Western Avenue, Chicago, Illinois, buys and sells new and used Oldsmobiles. On July 8, 1976, Nortown was the owner of a 1976 Oldsmobile 98 as evidenced by a carbon copy of an invoice for the automobile. The invoice, which included a serial number, indicated that the automobile was delivered to Nortown on May 20, 1976, from General Motors. He believed that the original invoice was with the Oldsmobile Division of General Motors in Lansing, Michigan.

Prior to July 8, 1976, Nortown reported to the police department and to General Motors that the said automobile had been stolen. The approximate value of the automobile then was $6,000. Sometime after it was reported stolen, he observed the automobile again when it was returned to Nortown's service department by two other Nortown employees. "To the best of [his] recollection" the automobile had been damaged on the driver's side, across the front and back doors. He checked the vehicle identification number of the returned automobile and verified that it was the same as the identification number on the previously mentioned invoice from General Motors. This automobile was subsequently repaired and sold in the ordinary course of business. Nortown did not "ever give the Defendant William E. Hope permission to use, possess, operate or in any way control that automobile."

*Dennis Blum, Franklin Park Police Officer*

He was proceeding east on Grand Avenue shortly after midnight on July 8, 1976, when he observed a 1976 Oldsmobile parked in front of the Western Auto Tires Store at 9777 Grand Avenue. Two people exited the car, walked up to the front of the building and looked into the store window. Defendant was one of these two people. After observing them for four or five minutes he drove around the block in order to "position myself in such a manner as to observe the parties." The two returned to the automobile and proceeded eastbound on Grand Avenue. As he followed them he ran a check on the license plates and determined that the plates had been issued to a 1971 Dodge Dart. When they drove into a

Motorola parking lot he called for a back-up unit. Officer Robert Flood arrived to provide assistance. Blum then asked the driver for his driver's license and vehicle identification. The driver, who was the defendant, produced an expired temporary Illinois driver's license and stated that he did not have the vehicle registration with him. He asked defendant why the license plates on the vehicle did not register to a 1976 Oldsmobile, but received no response. At his request Flood ran a check to determine whether the Oldsmobile was stolen and upon receiving a report over the radio stating that "the vehicle identification and vehicle in question was reported stolen," he placed defendant under arrest. He was later "informed that the vehicle was owned by Nortown Oldsmobile." Although he recalled that there was "minor damage to the side" of the automobile, he could not recall whether the passenger's side or driver's side was damaged.

### For the Defendant
#### Terry Bullock

He is defendant's cousin. On the evening of July 8, 1976, defendant and 10 or 12 other people were playing cards and shooting pool in the basement of his house at 642 N. Homan, Chicago, Illinois. Defendant was present for approximately four hours. At about 9:30 or 9:45 p.m. that evening Willie Wilson, "better known as Fast Willie," arrived at his house along with Margaret McKnight. Defendant asked Wilson if he could borrow his car. When Wilson gave defendant the car keys, Bullock asked defendant if he could ride along because he wanted to pick up a friend. With the defendant driving, they left in a white Oldsmobile 98. They travelled north on Homan to Grand Avenue and then took Grand to Franklin Park "to pick up the girls." Along the way they stopped at a tire store and stood for several minutes looking in the display window. They then left the store and drove "to the place to pick up the girls." After waiting in the parking lot for 10 or 15 minutes, they were approached by two police officers. When he and defendant exited the car, one of the officers stated "The license plates to the car do not match." He testified that before he entered the Oldsmobile that evening he had no knowledge that it was a stolen automobile.

On cross-examination he admitted that he did not know Willie Wilson's address or age and did not really know Wilson very well, but had seen him in the neighborhood five or six times prior to July 1976. He admitted that he spoke with John Healy, an investigator, for the State's Attorney's Office, on November 12, 1976. He told Healy that at the time of the arrest he was "in Franklin Park to pick up a girl at Motorola and drive her home." However, he did not recall telling Healy that this was the only time he had seen the Oldsmobile. Although he did not recall telling Healy

that he did not know where the automobile came from, he admitted that he could have made such a statement. He did not tell "this story" to the police when defendant was arrested because, "[T]hey didn't ask me anything."

*Emma Hope*

She is defendant's mother. She testified that on July 8, 1976, defendant was living at her home at 642 N. Homan Avenue, Chicago, but was free to "stay out" when he wanted to. On the evening of July 8, 1976, defendant had a "get together" in the basement of her home. Willie Wilson, who she called "Speedy Willie," arrived at the get together at approximately 10 p.m. accompanied by a lady named Margaret. She did not observe the automobile Wilson drove that evening. However, on a number of prior occasions Wilson drove her to work, to the store and to the clinic in a 1976 white Oldsmobile. The first time Wilson drove her to the store in a 1976 white Oldsmobile 98 was June 14, 1976. Wilson lived on her block and frequently visited her home. She knew him for about two years. She described Wilson as being 5 feet 7 inches tall, 145 pounds, thin faced and very dark complected. He was "Black-black, not negro black but black, black" and had "a partial on the side of his mouth which hooks onto his teeth."

At approximately 10 or 10:30 p.m. her son received a phone call. Although she did not know to whom he was speaking, she heard him say, "I'll be there about 12:00 or 12:30 if I can borrow a car." Defendant then borrowed a car from Willie Wilson and left along with Terry Bullock in a white Oldsmobile 98.

On cross-examination, she testified that defendant did not, to her knowledge, use the name Willie Wilson. She admitted that prior to trial two white men who said they were from the State's Attorney's Office came to her home. She testified that although she told one of these men that defendant had not lived with her for five years, he was at her home every day. She denied telling Mr. Healy of the State's Attorney's Office that she had not observed the automobile which defendant borrowed on July 8, 1976.

*Margaret McKnight*

On July 8, 1976, at about 9:30 or 10 p.m. she arrived at 642 N. Homan with her boyfriend, Willie Wilson. They drove there in a white Oldsmobile which Wilson had been driving for a couple of months. When they arrived she saw Terry Bullock, Emma Hope and defendant. She observed Wilson and defendant engage in a conversation following which Wilson gave defendant car keys. Defendant asked his brother for his driver's license and then left with Terry Bullock. She remained there until about 12:30 a.m. and then left with Wilson. The next day Wilson gave her $500 to post bail bond for defendant.

On cross-examination, she testified that she had not seen Willie Wilson since the incident. She had known Wilson for a month prior to July 8, 1976. Although she went "out socially" with Wilson, she had never been to his home. She believed he lived "on Trumbull somewhere," about two blocks from defendant's home. She testified that defendant and Wilson were probably friends and that she "had seen them together" five or ten times prior to July 8, 1976. She admitted that she did not see defendant get into the car and that she did not know what he did after leaving the house. She and Wilson left the party and went to her house on a bus. She first learned of defendant's arrest when he called Willie Wilson at her house the next day. She did not know whether defendant ever used the name Willie Wilson.

*For the State—Rebuttal*

The parties stipulated that Officer Lemke of Area 4 Special Operations would testify that when he arrested defendant on June 24, 1976, defendant identified himself as Willie Wilson and gave his address as 642 N. Hoyne.

OPINION

Defendant contends that he was not proven guilty beyond a reasonable doubt. He argues that the State failed to prove that the Oldsmobile allegedly owned by Nortown was the same automobile he was driving at the time of his arrest.

Count I of the complaint against defendant alleged that on July 8, 1976, he "committed the offense of theft in that he knowingly obtained and exerted unauthorized control over a 1976 Oldsmobile Ninety Eight automobile * * *, the property of Nortown Oldsmobile, Inc., a corporation." Count II alleged that on the same date defendant "committed the offense of possession of a stolen vehicle in that he, not being entitled to possession of a vehicle, to wit: a 1976 Oldsmobile Ninety Eight automobile, serial number 3V39T6M400689, possessed said vehicle, the property of Nortown Oldsmobile, Inc. knowing it to have been stolen."

■■ Our supreme court has held that "[w]here an indictment charges an offense either against persons or property, the name of the person or property injured, if known, must be stated, and the allegation must be proved as alleged." (*People v. Walker* (1955), 7 Ill. 2d 158, 161, 130 N.E.2d 182, 183.) Such an essential element may not be merely inferred. (*People v. Mosby* (1962), 25 Ill. 2d 400, 185 N.E.2d 152.) In determining whether the State has met its burden of proof, we note that although great consideration must be given to the findings of the trier of fact, those findings are not conclusive, and "it is our duty to set a conviction aside

where the evidence is so unsatisfactory as to raise a reasonable doubt of a defendant's guilt." *People v. Reese* (1966), 34 Ill. 2d 77, 80, 213 N.E.2d 526, 527.

We believe, after a careful review of the record before us, that the State failed to conclusively establish beyond a reasonable doubt that the automobile driven by defendant at the time of his arrest was owned by Nortown. The evidence established that a 1976 white Oldsmobile 98 was reported stolen by Nortown sometime between May 20, 1976, and July 8, 1976, and that defendant was arrested on July 8, 1976, while driving a 1976 white Oldsmobile 98 which had apparently been reported stolen by an unidentified owner. However, the vital link necessary to establish that the Oldsmobile driven by defendant and the one missing from Nortown were the same automobile is clearly lacking. The State did not introduce a certificate of title for the automobile driven by defendant to establish Nortown's ownership. Nor did the State prove the Oldsmobile driven by defendant and the one missing from Nortown bore the same vehicle identification numbers, although both numbers were available to the State. Furthermore, no chain of custody testimony was presented to indicate that the Oldsmobile in which defendant was arrested was later returned to, and accepted by, Nortown. Although Cary B. Seiderman, assistant general manager of Nortown, testified that Nortown's missing Oldsmobile was returned by two other Nortown employees, the record does not indicate where or how these employees had obtained the automobile. There is certainly no evidence establishing that these employees obtained possession of the Oldsmobile from the police. The record does not reflect that date on which Nortown's automobile was returned and does not even preclude the possibility that Nortown had recovered its Oldsmobile prior to July 8, 1976 the date of defendant's arrest. A judgment of conviction cannot be allowed to stand where, as here, the evidence fails to convincingly establish the ownership of the automobile allegedly stolen by defendant. See *People v. Williams* (1962), 24 Ill. 2d 214, 181 N.E.2d 353.

■■ The State contends, however, that Officer Blum's testimony that he was later "informed" that the Oldsmobile driven by defendant was owned by Nortown was sufficient to establish Nortown's ownership. We cannot agree that Blum's hearsay statement concerning information from an unidentified source was sufficient to establish ownership beyond a reasonable doubt. The record is devoid of any evidence concerning the reliability of Blum's information.

■■ The State also relies upon *In re Woods* (1974), 19 Ill. App. 3d 753, 312 N.E.2d 822, to support its contention that Nortown was proven beyond a reasonable doubt to be the owner of the Oldsmobile driven by defendant at the time of his arrest. They argue that based upon *Woods* the similarity

of year, make, model and color, and the damage to one side, were sufficient to establish Nortown's ownership. However, the facts in the *Woods* case are significantly distinguishable from those of the instant case. In *Woods* the owner of a 1972 Ford Torino with a red body and black top reported his automobile missing on February 25, 1973. At approximately 11:45 a.m. on February 27, 1973, defendant was arrested while driving a red and black 1972 or 1973 Torino. The arresting officer discovered a "lock puller" in the back seat of the automobile and stated that the automobile was in such a condition that it could be started without a key. He did not find a key in the car or on defendant. The owner testified that around noon on February 27, 1973, he recovered his automobile from the police station and that the ignition had been pulled from the car when he recovered it. Unlike the situation in *Woods*, there was no evidence in the present case to indicate that Nortown recovered the missing Oldsmobile from the police station shortly after defendant's arrest. We do not believe that the mere fact that the automobile missing from Nortown and that driven by defendant were quite similar to each other is sufficient to prove defendant's guilt beyond a reasonable doubt.

In light of our disposition of defendant's first contention we need not consider his remaining contentions.

For the foregoing reasons the judgment of the circuit court must be reversed.

Reversed.

SULLIVAN, P. J., and WILSON, J., concur.