THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOUIS WILLIAMS, a/k/a Lewis H. Williams, Defendant-Appellant.

First District (2nd Division)   No. 84—2843

Opinion filed May 13, 1986.

James J. Doherty, Public Defender, of Chicago (Emily Eisner, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Beth Herndobler, and Maureen O'Brien, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Louis Williams, was charged by information with armed robbery, armed violence based on armed robbery, theft, possession of a stolen vehicle, unlawful restraint and two counts of aggravated kidnaping. After a bench trial he was found guilty of all but the aggravated kidnaping charges. He was sentenced to two 20-year terms for armed-robbery and armed-violence charges, five years each for possession of a stolen vehicle and theft, and three years for unlawful restraint, all to be served concurrently.

On the afternoon of October 8, 1983, the victim, Cheryl Ann Sintic, walked to her car in the Sears parking lot at 61st Street and Western Avenue in Chicago. She drove a 1979, brown, two-door Cadillac Coupe deVille. She noticed that defendant was walking toward her. When she opened her car door and put her packages in the car, the defendant ran up to her with a gun and told her to get inside. At this time, she saw his face. Defendant got in the car and told Ms. Sintic to move over. Again she looked at his face as she slid over to the front passenger seat. Defendant took her car keys and told Ms. Sintic to put her head between her legs. She complied. Defendant then drove around for 20 to 30 minutes while pointing the gun at her side the entire time.

After a while, defendant stopped the car and took money from Ms. Sintic's purse. As defendant was counting the money, Ms. Sintic looked up and saw his face again. Defendant drove a while longer, stopped the car, and told Ms. Sintic to get out of the car, walk away, and not to yell or turn around. As she got out, Ms. Sintic looked at defendant's face once again. She walked away, flagged a cab, and went to the nearest police station where she filed a report. She described the defendant as a black male about 20 to 30 years old, 5 feet 5 inches tall, and weighing about 125 pounds.

Four days later, on October 12, 1983, defendant went to an automobile alarm company to have an alarm installed on "his" 1979 brown Cadillac Coupe deVille. Defendant told Inez Gray, manager of the

alarm company, that he wanted to use his mother's credit card to pay for the installation. The alarm company then installed an alarm on "defendant's" Cadillac. Ms. Gray gave defendant the bill and he gave her a Visa credit card bearing the name of Cheryl Ann Sintic. At this point, Ms. Gray walked out to the car and looked at the license applied for sticker on the windshield. The windshield sticker bore defendant's name and address. However, the sticker was intended for a 1975 Chrysler. After Ms. Gray looked at the car, she called in the credit card and was informed that the card was stolen. When she informed defendant that she would not honor the credit card, he paid for the alarm in cash and left.

Thereafter, on October 14, 1983, Officer Ronald Chirello of the Chicago police department was investigating a separate theft of Illinois license plates. The theft report indicated that defendant was a suspect and was driving a 1979 Cadillac Coupe deVille. Officer Chirello spotted a 1979 Cadillac at the corner of Jackson and Campbell streets and kept the car under surveillance. Later, defendant drove away in the car. Officer Chirello ran the vehicle identification number (hereinafter VIN) of "defendant's" vehicle into the computer and was informed that the vehicle was taken in an armed robbery and that it belonged to Cheryl Ann Sintic. Defendant was placed under arrest and both he and the vehicle were searched. Pursuant to the search, the officer recovered Ms. Sintic's checkbook, savings book, a receipt for car repairs with Ms. Sintic's name on it, and two of her credit cards. On that same day, Ms. Sintic picked defendant out of a lineup as the offender. Defendant was also positively identified at trial by Ms. Sintic and by Ms. Gray.

On appeal, the defendant raises the following issues: (1) whether he was found guilty beyond a reasonable doubt; (2) whether the trial court erred in admitting certain documents that purported to be public records; (3) whether his 20-year sentence for armed robbery was an abuse of discretion; (4) whether his conviction for armed violence can be sustained when it was predicated on armed robbery and both convictions arose out of the same physical act; and (5) whether his sentence for the "incidental" offense of unlawful restraint was proper.

I

Defendant contends that his convictions should be reversed because the victim's identification testimony was insufficient and the car found in defendant's possession did not match the victim's car. We disagree.

■■ The sufficiency, weight and credibility given to a witness' testimony is a determination for the trier of fact. (*People v. Sanders* (1980), 87 Ill. App. 3d 708, 712, 410 N.E.2d 182.) The testimony of one identi-

fication witness, if positive and credible, and even if contradicted by the accused, is sufficient for a conviction. (*People v. Diaz* (1981), 101 Ill. App. 3d 903, 913, 428 N.E.2d 953, *appeal denied* (1982), 91 Ill. 2d 554.) It may be significant, of course, that such testimony is consistent with and supported by testimony of other identification witnesses.

The most important factor is whether the witness had an adequate opportunity to view the offender at the time of the crime. (*People v. Moore* (1983), 115 Ill. App. 3d 266, 270, 450 N.E.2d 855.) Therefore, an identification may be credible on that basis alone. (*People v. Bell* (1976), 44 Ill. App. 3d 185, 190-91, 357 N.E.2d 1256, *appeal denied* (1977), 65 Ill. 2d 582.) Moreover, a positive identification need not be based upon perfect conditions for observation, nor does the observation have to be of a prolonged nature. *People v. Crawford* (1980), 90 Ill. App. 3d 888, 891, 414 N.E.2d 25.

■ In the instant case, the trial court, as trier of fact, found the victim's testimony to be credible. Ms. Sintic testified that she observed defendant's face four times within the 20 to 30 minutes that she was with defendant. Although Ms. Sintic had her head down as defendant drove, this factor did not undermine her ability to see defendant's face at other intervals during her encounter with defendant. Ms. Sintic first saw defendant when he approached her as she walked toward her car in the parking lot. Next, she saw his face when she moved over to the passenger side of the car. She had another opportunity to view him while he counted the money he stole from her purse. Finally, she looked "straight at" defendant as she got out of her car.

In addition, Ms. Sintic's testimony was corroborated by Ms. Gray, who testified that defendant drove a 1979 Cadillac Coupe deVille to her store and attempted to use a Visa credit card bearing Ms. Sintic's name to pay for an alarm he had installed in the car. Six days after the incident at the Sears' parking lot, defendant was found in possession of Ms. Sintic's automobile, checkbook, savings passbook, repair bill, and credit cards. Both Ms. Sintic and Ms. Gray positively identified defendant at trial.

Defendant also contends that the evidence failed to establish that the car in which he was arrested was the one stolen from Ms. Sintic. In support, he cites to *People v. Hope* (1979), 69 Ill. App. 3d 375, 387 N.E.2d 795, and *People v. Stone* (1979), 75 Ill. App. 3d 571, 394 N.E.2d 810.

■ We find both cases distinguishable because in neither did an eyewitness testify that the defendant stole the car, nor was evidence introduced that the stolen vehicle and the one in which the defendants were arrested bore the same VIN. In this case, Ms. Sintic testified that

defendant was the man who stole her car and that the VIN of her car was 6D47599181496. Officer Chirello testified that after defendant was stopped in a 1979 Cadillac Coupe deVille, he called in the VIN of that car and was told that it was registered to Sintic and had been reported stolen. Chirello testified that the VIN was 6D47S99181496. The trial court resolved this minor discrepancy over the VIN by determining that the correct VIN was the one to which Chirello testified. We find that the evidence was sufficient to establish that defendant was in possession of the car stolen from Ms. Sintic. The minor discrepancy in the testimony does not alter the fact that the stolen vehicle was identified by its VIN, which in itself is sufficient for a conviction. See, *e.g., People v. Daniels* (1983), 113 Ill. App. 3d 523, 447 N.E.2d 508, *appeal denied* (1983), 96 Ill. 2d 543.

## II

■ Defendant contends that it was error to allow into evidence a purported public record because no foundation was established for its admission. The document consisted of certificates of title to the stolen vehicle and a computer print-out sheet, stapled together. The front cover bore the seal of the Secretary of State and stated that it was a "titled history of all documents in file covering 1979 Cadillac s/n 6D47S99181496." This evidence was admitted at the close of the State's case in chief. Defendant objected, claiming that notwithstanding the document's seal, no foundation had been established for its admission.

The prerequisite for admission of a public record as an exception to the hearsay rule is that the record is made in the ordinary course of business and that it is authorized by statute, agency regulation, or is required by the nature of the public office. *People v. Hester* (1980), 88 Ill. App. 3d 391, 395, 410 N.E.2d 638.

The State offered no evidence to satisfy this criteria. Thus, it was error to allow this purported public record into evidence. (See, *e.g., People v. Faulkner* (1980), 86 Ill. App. 3d 136, 139-40, 407 N.E.2d 126, *appeal denied* (1980), 81 Ill. 2d 603.) However, where the erroneously admitted evidence does not prove any element of the offense not established by other properly admitted evidence, the error is harmless. (*People v. Collins* (1979), 70 Ill. App. 3d 413, 387 N.E.2d 995.) In light of the other properly admitted evidence of defendant's guilt, we find the error harmless.

## III

■ Defendant contends that the trial court abused its discretion in

sentencing him to 20 years for armed robbery.

A conviction for armed robbery, a Class X felony, carries a sentence of from 6 to 30 years. (Ill. Rev. Stat. 1983, ch. 38, pars. 18—2(b), 1005—8—1(a)(3).) Although his sentence was within the statutory range, defendant argues that certain mitigating factors warrant a reduction in his sentence. See, *e.g., People v. Nelson* (1982), 106 Ill. App. 3d 838, 847, 436 N.E.2d 655.

The record indicates that defendant was a college student at the time he was arrested. He is presently 26 years old. His father died in 1970, and his mother, an apparent heroin addict, died in 1975. He was raised by his grandmother, who died when he was 18. He dropped out of high school in his senior year although he received A's and B's, but received a high school equivalency certificate (GED) while incarcerated in Pontiac Correctional Institute.

He is an epileptic who takes Dilantin to control seizures. He is presently drug free but was addicted to codeine and smoked marijuana daily for ten years. Defendant's prior criminal history includes an armed-robbery conviction, a robbery conviction, and an attempted-armed-robbery conviction.

Although a reviewing court is authorized to reduce a sentence under Supreme Court Rule 615(b) (87 Ill. 2d R. 615(b)), the determination and imposition of a sentence is principally within the discretion of the trial court. The trial court is required to fashion a sentence that balances the need to protect society and the potential rehabilitation of the offender. (*People v. Rosa* (1982), 111 Ill. App. 3d 384, 391-92, 444 N.E.2d 205.) A sentence will not be disturbed on appeal unless it greatly diverges from the purpose and spirit of the law or is highly disproportionate to the offense. (*People v. Nelson* (1982), 106 Ill. App. 3d 838, 846, 436 N.E.2d 655.) We find that, notwithstanding the fact the victim in the present case was not physically harmed and defendant has continued his higher education despite an unfortunate background, his prior criminal history militates against a reduction in sentence.

## IV

Defendant next contends that his conviction for armed violence must be vacated because it was improperly predicated upon armed robbery or, alternatively, because his convictions for both armed violence and armed robbery arose out of the same act.

■■ Defendant first argues that the rule announced in *People v. Del Percio* (1985), 105 Ill. 2d 372, 475 N.E.2d 528, mandates the vacation of his armed violence conviction. There, defendant appealed his conviction for armed violence based upon the predicate offense of attempted

armed robbery. He contended that the presence of a shotgun impermissibly served to enhance attempted robbery, a Class 3 felony, to attempted armed robbery, a Class 1 felony, and then to enhance the latter offense to armed violence, a Class X felony. The court agreed, finding that a conviction for armed violence must be vacated "whenever a predicate felony is doubly enhanced because of the presence of a weapon." 105 Ill. 2d 372, 377, 475 N.E.2d 528.

We find that the "double enhancement" proscription announced in *Del Percio* does not apply to the case before us. Here, the presence of a weapon did serve to elevate the "underlying" felony of robbery, a Class 2 felony, to armed robbery, a Class X felony. However, no double enhancement occurred. The predicate felony of armed robbery was enhanced due to the presence of a weapon. No other enhancement occurred because armed robbery and armed violence are both Class X felonies. Therefore, defendant's conviction for armed violence is not automatically precluded.

■ Defendant also contends that his armed-violence conviction must be vacated because the armed violence and the armed-robbery convictions arose out of the same physical act. Thus, defendant argues that the lesser included or necessarily included offense must be vacated.

Multiple convictions based on a single act cannot stand where a defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) Because armed violence requires a predicate felony, multiple convictions for armed violence and the predicate felony are improper where the same physical act is the basis for both charges. *People v. Donaldson* (1982), 91 Ill. 2d 164, 170, 435 N.E.2d 477.

The State argues that multiple convictions were proper in the present case because defendant's theft of the victim's money and his theft of the car constituted two separate acts. We disagree.

■ The factors used to determine whether a defendant's conduct consisted of a single act or multiple acts include:

"(1)  the existence of an intervening act or event;

(2)  the time interval between successive parts of defendant's conduct;

(3)  the identity of the victim;

(4)  the similarity of the acts performed; and

(5)  whether the conduct occurred at the same location."

(*People v. Horne* (1984), 129 Ill. App. 3d 1066, 1074, 473 N.E.2d 465.) In addition, prosecutorial intent, as reflected in the language of the

informations filed against defendant, is another factor to be considered in determining whether defendant's conduct was a single act or several acts. 129 Ill. App. 3d 1066, 1074, 473 N.E.2d 465.

■ We conclude that defendant's conduct constituted a single act in that it was continuous and was not separated by an intervening event, the time interval between the thefts of the victim's money and car was very short, and the conduct involved in both thefts was quite similar. Furthermore, the informations charging defendant with the offenses contain essentially identical allegations. The information that charged armed robbery alleged that defendant "by the use of force and by threatening the imminent use of force while armed with a dangerous weapon, took a 1979 Cadillac motor vehicle and United States currency, from the person and presence of Cheryl Sintic." The information that charged him with armed violence alleged that he, "while armed with a dangerous weapon, to wit: a gun, by the use of force and by threatening the imminent use of force, took a 1979 Cadillac motor vehicle and United States currency from the person and presence of Cheryl Sintic." This evinces an intent by the State to treat defendant's conduct as a single act. We therefore conclude that defendant was improperly convicted of both offenses. One of the convictions must be vacated.

■ It is necessary to determine which of the convictions is the more serious and will stand. (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) Both armed robbery and armed violence with a category 1 weapon such as a gun are Class X felonies. (Ill. Rev. Stat. 1983, ch. 38, pars. 18—2(b), 33A—1(b), 33A—3(a).) In *People v. Crawford* (1980), 90 Ill. App. 3d 888, 414 N.E.2d 25, we determined that armed robbery is the more serious offense, reasoning the armed violence may be committed with a category II weapon, resulting in a lesser penalty. (Ill. Rev. Stat. 1979, ch. 38, pars. 33A—1(c), 33A—3(b).) Armed robbery, on the other hand, occurs when any dangerous weapon is used. Additionally, the court relied on the rule of statutory construction which requires that, when a statute generally encompasses subject matter which is contained in a more specific statute, the specific statute governs over the general statute. *People v. Crawford* (1980), 90 Ill. App. 3d 888, 889-90, 414 N.E.2d 25.

Therefore, we find that defendant's conviction for armed violence must be vacated. Remandment is unnecessary because concurrent sentences were imposed for both offenses. *People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44, *cert. denied* (1984), 469 U.S. 1028, 83 L. Ed. 2d 372, 104 S. Ct. 1310.

## V

Defendant next contends that his conviction for unlawful restraint must be vacated because the detention of the victim was only incidental to the armed robbery. In support, he refers to *People v. Kuykendall* (1982), 108 Ill. App. 3d 708, 439 N.E.2d 521, where the court determined that an unlawful restraint conviction was improper because it was incidental to a battery charge. However, the court noted that "[u]pon a proper set of facts, unlawful restraint is subject to prosecution along with other offenses." 108 Ill. App. 3d 708, 711, 439 N.E.2d 521.

Thus, notwithstanding that unlawful restraint is based upon an incidental act, conviction therefore is proper in certain circumstances. "[W]hen more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." (*People v. King* (1977), 66 Ill. 2d 551, 566, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) Additionally, the court must find that the unlawful restraint constituted a separate act. *People v. Crespo* (1983), 118 Ill. App. 3d 815, 823, 455 N.E.2d 854.

The information that charged defendant with unlawful restraint alleged that "he knowingly, without legal authority, detained Cheryl Sintic." We find that defendant's conviction was proper because the conduct comprising the offense was an act separate from the armed robbery, was not necessary to effectuate the armed robbery, exceeded the force requirement of armed robbery, and each of the offenses required proof of different elements. *People v. Crespo* (1983), 118 Ill. App. 3d 815, 823-24, 455 N.E.2d 854.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

STAMOS and HARTMAN, JJ., concur.