THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
CALVIN JORDAN, Defendant-Appellant.

First District (3rd Division)   No. 1—93—1502

Opinion filed June 26, 1996.

Armand L. Andry, of Oak Park, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Mary P. Needham, Assistant State's Attorneys, of counsel), for the People.

JUSTICE RIZZI delivered the opinion of the court:

Defendant, Calvin Jordan, was tried by a jury and found guilty of armed robbery. He was sentenced to 10 years in the Illinois Department of Corrections. On appeal, defendant alleges that (1) the trial court erred in denying his motion to quash arrest; (2) the trial court erred in refusing to allow him to advise the jury of a witness' conviction of a felony; (3) the trial court erred in allowing hearsay evidence; (4) the prosecution committed reversible error in closing argument to the jury; and (5) he was not proven guilty beyond a reasonable doubt. We affirm.

On March 13, 1992, Dale Austin was attacked and robbed by sev-

eral assailants outside a Chicago Housing Authority complex. At trial, Austin testified that at approximately 1:15 a.m. he parked his car near 1315 Hastings Avenue in Chicago. He then began walking through one of the buildings when a young man approached him and asked him if he wanted drugs. Austin declined and walked away. Then, two women approached him and asked him if he wanted to buy drugs. The young man who had initially asked Austin if he wanted to buy drugs then grabbed him and put his arms around Austin's neck. He put a sharp object in Austin's back and stated: "Don't move or I'll blow your Mother Fuckin head off." As the young man attempted to pull Austin down, the two women joined in the struggle. Defendant then joined the assailants as they attacked Austin. Austin identified defendant in open court at trial.

Austin testified that defendant held him down while the others went through his pockets. Defendant and the others also hit Austin and cut his face. Another man then appeared with a shotgun and pointed it at Austin. He demanded that Austin give one of the men his money. Austin then watched as one of the assailants went through Austin's car, which was about 30 feet away. The man with the shotgun pushed Austin, and Austin tripped over a chain fence. When Austin got up, the assailants fled. Austin then flagged down a police officer and told him what happened.

Although Austin's glasses were knocked off during the attack, he could see things that were close. Austin testified that defendant was right in front of him, as close as 18 inches away. Austin testified that he could clearly see defendant's face. There were streetlights at the location where the attack took place, and Austin was practically under a light when he was attacked. On March 15, 1992, Austin viewed two separate lineups. At the first lineup, Austin identified one of his assailants. At the second lineup, he identified defendant as one of the assailants.

Chicago Housing Authority police officer Angela Dudley also testified at trial. She investigated the incident. She testified that on March 14, 1992, she had a conversation with two citizens about a recent robbery that occurred in the neighborhood of the Chicago Housing Authority complex. During the course of her investigation, Officer Dudley contacted Dale Austin and spoke again to one of the citizens. Dudley and Officer Andre Sneed, Dudley's partner, and one of the citizens then canvassed the area looking for the subjects involved in the armed robbery. As a result, they located and arrested Paul Calbert without a warrant. Calbert was identified in a lineup. Dudley, however, continued her investigation. She went back to the area of the Chicago Housing Authority complex looking for the defendant.

Officers Dudley and Sneed located defendant in the 1300 block of Washburne Avenue and arrested him.

Defendant did not testify and did not present any evidence at trial. Prior to trial, however, defendant presented a motion to quash his arrest. After conducting a hearing on the motion, the trial court denied defendant's motion. On appeal, defendant contends that the trial court erred because "the police lacked probable cause to arrest defendant[,] who had not been identified by the alleged victim of the crime" prior to defendant's arrest. We disagree with defendant's contention.

■ A person may be arrested without a warrant when a police officer has reasonable grounds to believe the person has committed a crime. The test is whether the information taken in its totality would lead a reasonable, prudent person to believe that the person arrested has committed the offense. *People v. Adams*, 131 Ill. 2d 387, 396-97, 546 N.E.2d 561, 565 (1989). The information need not be sufficient to establish guilt beyond a reasonable doubt. Also, probable cause may be founded upon evidence that would not be admissible at trial; even hearsay is proper grounds for establishing probable cause. *People v. Johnson*, 187 Ill. App. 3d 756, 771, 544 N.E.2d 392, 401 (1989). Moreover, the reviewing court may consider evidence at trial that would aid in establishing the legality of the arrest. *People v. Mitchell*, 123 Ill. App. 3d 868, 873, 463 N.E.2d 864, 869 (1984).

Here, the Chicago Housing Authority police investigating the armed robbery the day after it occurred obtained information from two citizens indicating the defendant's involvement in the crime. One of the citizens helped the police look for the offenders. After the police arrested one of the offenders, that offender identified the defendant, by his name and nickname, as an accomplice. Officer Sneed knew defendant by his nickname.

■ Probable cause to arrest can be established by the statement of an accomplice, especially where the statement is corroborated by what the police may already know. *People v. James*, 118 Ill. 2d 214, 224-25, 514 N.E.2d 998, 1002-03 (1987). The arrest in this case was made upon reliable information from citizens and an accomplice to the armed robbery. The information from both sources was consistent. It follows that the trial court's ruling was reasonable and not manifestly erroneous. Thus, we reject defendant's contention that there was no probable cause to arrest defendant because he was not identified by the victim prior to his arrest. See *People v. Galvin*, 127 Ill. 2d 153, 535 N.E.2d 837 (1989).

■ Defendant next contends that the trial court improperly refused to allow defendant to introduce evidence of the victim's 14-

year-old felony conviction for violations of the Credit Card Act (Ill. Rev. Stat. 1983, ch. 17, par. 5901 *et seq.*), for impeachment purposes. Defendant, however, did not make an offer of proof, and the record does not establish what specific criminal violations were involved in the 14-year-old conviction; it appears that a 30-month probation sentence was imposed.

The trial court has discretion to refuse such evidence for impeachment purposes if it believes that the prejudicial effect of the impeachment outweighs the probative value of the prior conviction as to the issue of credibility. See *People v. Montgomery*, 47 Ill. 2d 510, 268 N.E.2d 695 (1971). Here, based upon the lack of specificity as to the criminal violation that was involved and time period that passed from the time of the conviction, the record does not demonstrate that the trial court abused its discretion in barring the admissibility of the victim's 14-year-old credit card conviction, for which he had been placed on probation. The probative value of the conviction for impeachment purposes is virtually nonexistent. The trial court's ruling was not improper.

■ Defendant next claims that the trial court erred in allowing hearsay evidence at trial. Specifically, defendant argues that the trial court erred in allowing Officer Angela Dudley to testify that she had conversations with citizens during the course of her investigation of the crime and that afterwards as part of her investigation she went looking for the defendant. At no time did Officer Dudley repeat or relate her conversations with citizens. Under the circumstances, the testimony of Officer Dudley did not constitute hearsay. See *People v. Jones*, 153 Ill. 2d 155, 159-60, 606 N.E.2d 1145, 1147 (1992); *People v. Gacho*, 122 Ill. 2d 221, 248, 522 N.E.2d 1146, 1159 (1988).

In *Gacho*, the court stated:

"The defendant also contends he was denied a fair trial because the prosecutor was allowed to comment in closing argument on a hearsay statement by Infelise that named Gacho as one of the offenders, despite the trial court's ruling on a motion *in limine* to exclude the evidence. This argument concerns the testimony of Officer Coakley, who detailed the police investigation that led to the arrest of Gacho. He said he spoke to Infelise at the hospital for three or four minutes on the morning of December 12, 1982, and he and his partner then went to Chicago to look for Robert Gacho. In a sidebar, the defendant objected, claiming that the testimony was indirect hearsay of Infelise's statement identifying Gacho as one of the offenders, and he moved for a mistrial, which was denied. ***

The defendant contends, relying on *People v. Spivey* (1978), 58

Ill. App. 3d 677, *People v. Warmack* (1976), 44 Ill. App. 3d 243, and *People v. Campbell* (1983), 115 Ill. App. 3d 631, that the claimed hearsay statement of Infelise to Coakley had been injected into the trial by indirection. We must reject the claim. Had the substance of the conversation that Coakley had with Infelise had been testified to, it would have been objectionable as hearsay. The testimony of Coakley, however, was not of the conversation with Infelise but to what he did and to investigatory procedure. (*People v. Williams* (1977), 52 Ill. App. 3d 81, 87-88; see also *People v. Wright* (1974), 56 Ill. 2d 523.) As our appellate court stated in considering similar testimony, 'Such testimony is not hearsay because it is based on the officers' own personal knowledge, and is admissible although the inference logically to be drawn therefrom is that the information received motivated the officers' subsequent conduct.' (*People v. Hunter* (1984), 124 Ill. App. 3d 516, 529; see also McCormick, Evidence § 248, at 587 (2d ed. 1972).) Coakley's testimony was properly admitted." 122 Ill. 2d at 247-49, 522 N.E.2d at 1158-59.

In the present case, as in *Gacho*, the testimony of the investigating officer was not hearsay, because it was based on the officer's own personal knowledge, and was admissible although the inference logically to be drawn therefrom is that the information received motivated the officer's subsequent conduct. There is no merit to defendant's contention.

■ Defendant also contends that the prosecutor committed reversible error in closing argument to the jury. Defendant argues that the prosecutor improperly referred to hearsay evidence. Defendant, however, failed to object to the remarks during trial and failed to include any such objection in his post-trial motion. See *People v. Enoch*, 122 Ill. 2d 176, 187, 522 N.E.2d 1124, 1130 (1988). Thus, the issue is waived. In addition, there is no merit to defendant's contention on appeal.

Defendant's contention is based upon the following statement made by the prosecutor during closing argument: "Officer Dudley told you how she hit the streets interviewing people to find out what happened." This comment was based upon the evidence and was not improper because it contained no reference to hearsay. No error was committed.

■ Lastly, defendant contends that he was not proven guilty beyond a reasonable doubt because the victim, as the only occurrence witness, had too brief a time to view his attackers. We disagree.

The evidence is sufficient to establish that the area where the robbery occurred was well lit, under the range of an overhead light. The victim testified that although his eyeglasses were knocked off

during the struggle, he is able to see close objects without them. He testified that he clearly saw defendant because defendant was on top of him, holding him down, and that defendant "got in his face." He further testified that defendant was right in front of him, as close as 18 inches away, and that he could see the defendant's face. Moreover, the victim identified the defendant in a lineup and in open court at trial. The jury in this case was exposed to all the alleged infirmities in the victim's identification testimony and convicted the defendant. Determinations of the credibility of witnesses, the weight to be given the testimony of witnesses, and the reasonable inferences to be drawn from the testimony of witnesses as to identification are all within the province of the jury unless the identification of the defendant is so doubtful, vague and uncertain as to preclude an abiding conviction of guilt. In the present case, the identification testimony of the defendant was well within the realm of the jury's province for acceptance or rejection. See *People v. Gholston*, 124 Ill. App. 3d 873, 894, 464 N.E.2d 1179, 1194 (1984); *People v. Williams*, 143 Ill. App. 3d 658, 661-62, 493 N.E.2d 362, 365 (1986). The jury's determination must therefore stand.

Accordingly, the judgment is affirmed.

Affirmed.

TULLY, P.J., and GREIMAN, J., concur.