2019 IL App (1st) 172110-U

No. 1-17-2110

Order filed November 13, 2019

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 10973 |
| | ) | |
| CARMELO BURGOS, | ) | Honorable |
| | ) | James B. Linn, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Ellis and Justice Howse concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's conviction for possession of a stolen motor vehicle is affirmed over his contention that the State failed to prove beyond a reasonable doubt that he possessed the stolen vehicle.

¶ 2    Following a bench trial, defendant Carmelo Burgos was convicted of possession of a stolen motor vehicle (625 ILCS 5/4-103 (West 2016)) and sentenced to 78 months in prison. On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt

because there was insufficient evidence to establish that he possessed the stolen vehicle. We affirm.

¶ 3    Defendant was charged with one count of possession of a stolen motor vehicle which alleged that "he, not being entitled to the possession of a motor vehicle, to wit: 2005 Audi A4, property of Anthony Martell, possessed said vehicle knowing it to have been stolen or converted." Defendant waived his right to a jury and the case proceeded to a bench trial.

¶ 4    At trial, Jaritza Rodriguez testified that in March 2016 she lived at 1656 North Keeler with her boyfriend, Martell. Rodriguez regularly borrowed Martell's 2005 Audi to drive for Uber. On March 2, 2016, about 9:00 a.m., the Audi was parked in front of their apartment building on Wabansia. Martell had turned the Audi on to warm it up for Rodriguez and then left for work. About 9:30 a.m., Rodriguez noticed that the Audi was no longer outside, and called Martell to see if he had taken it. She then went outside to look for the car.

¶ 5    Rodriguez testified that the State had previously shown her clips from a surveillance system facing Wabansia. Rodriguez stated that People's Exhibit No. 1, the surveillance video, accurately depicted her outside looking for the Audi. The video also depicts two men, whose faces are not visible, driving away in the Audi. Rodriguez stated that she did not give defendant permission to drive the Audi.

¶ 6    Martell testified that in March 2016 he was living with Rodriguez at 1656 Keeler and owned a 2005 silver Audi A4 1.8 Turbo and a 2000 green Jeep Grand Cherokee. When Martell turned the Audi on for Rodriguez he left the keys in the ignition and did not lock the doors. About 9:30 a.m., Martell received a call from Rodriguez, who informed him that the car had been stolen. Martell then drove back to their apartment building. On the way there, he went south

on Kimball and turned right onto North Avenue headed west. While on North, he saw a vehicle that appeared to be his Audi. He explained, "once I got closer, I was able to see familiarities to my vehicle and recognize that it was mine driving east on North." At the time, Martell was heading west in the left lane of North, while the Audi was going east in the left lane. The only thing in between Martell's car and the Audi was the median. Martell said he was six feet away from the Audi, which was occupied by two Hispanic men. In court, Martell identified defendant as the driver.

¶ 7    Martell made a right turn on Avers to follow the Audi, which had pulled into a parking spot on the east side of the street. Martell pulled over directly in front of the Audi and defendant lowered the passenger side window and started yelling at Martell. The men yelled back and forth, and defendant said "get out of my way." During the encounter, Martell could "very clearly" see defendant's face. Defendant said "move or I'll hit your f***ing car." Martell responded, "You're driving my f***ing car." Defendant then paused for a moment, drove the Audi in reverse and pulled into an alley headed east. Martell followed the Audi for about one city block before he lost sight of it.  He then called the police.

¶ 8    An officer met Martell near Avers where defendant had previously stopped the Audi. Martell and the officer went to Martell's apartment, where other officers responded. Martell testified that his Audi had a "GPS tracking system" from the car dealer to locate the vehicle. Martell called the GPS company and, while on the phone with a representative, accompanied the officers to help them locate the car. As the representative relayed locations to Martell, the officers relayed those locations to other officers through the police radio.

¶ 9    Martell saw his Audi again about an hour later on Augusta and Drake. The car was "totaled," and did not have anyone inside of it. Martell checked the car to retrieve his belongings. As he did so, he noticed that two Bluetooth headsets were missing from inside the glove compartment. Martell also noticed several items in the car that he did not recognize, including a tablet computer on the passenger seat, a wallet in the center console, clothing, duffel bags, paperwork, and a photograph of defendant. Martell identified People's Exhibit No. 2 as the wallet from the vehicle's center console and People's Exhibit No. 3 as the photograph found in the recovered vehicle's trunk. About 2:00 p.m., detectives showed Martell a photo array from which he identified defendant as "the person that was driving [his] vehicle." Martell identified People's Exhibit No. 4 as the photo array he was shown.

¶ 10    Officer Salvatore Sammartino testified that on March 2, 2016, about 10:00 a.m., she was working with Officer James Montano when she responded to a call of a motor vehicle theft. Sammartino met Martell at 1656 Keeler, where he told her that his Audi had a tracking device. Martell contacted the GPS service to get the location of the vehicle and accompanied Sammartino in her police car. When Martell received locations, Sammartino relayed them on the police radio. Sammartino and Martell also went to the locations that were being relayed by the tracking service.

¶ 11    Sammartino located Martell's vehicle near 950 Drake. The car was unoccupied and "in pretty bad shape." Martell identified the car as his, but there were numerous items in the car that did not belong to him and that he was not familiar with. From inside a wallet in the center console of the car, Sammartino recovered a Human Health and Family Services medical card with defendant's name on it. Montano found a "photograph of a male subject" in the trunk of the

car. On March 6, 2016, Sammartino retrieved a surveillance video from Martell's building. On cross-examination, Sammartino testified that Jennifer Real and Ashley Perez were arrested in connection with criminal trespass to the recovered Audi.

¶ 12    The State introduced Exhibits 1 through 4 into evidence. The State rested. Defendant moved for a directed finding, which the trial court denied. The parties stipulated that defendant's Exhibit No. 1 is a picture of Kenneth Perez from the Florida Department of Corrections. Perez was incarcerated on January 21, 2015, and has a release date of June 30, 2047. The defense rested.

¶ 13    In rebuttal, the State called Officer Tlapa, who testified that on March 2, 2016, about 11:00 a.m., she was on patrol near Division and Kedvale.[1] Tlapa heard the description of Martell's car, including its make and model, over her police radio. Near the 900 block of Kedvale, Tlapa saw "[a] silver Audi" matching that make and model. The car was being driven by a Hispanic man and two women were exiting it. In court, Tlapa identified defendant as the driver. Tlapa asked the dispatcher to clarify the license plate of the stolen Audi, and saw "that the plate matched." Tlapa tried to make a U-turn but the Audi fled the scene. She notified dispatch that she had spotted the vehicle and provided them with the direction it travelled in. She relocated to the original location where she saw the vehicle and arrested Real and Perez, the two women that had exited the Audi. On cross-examination, Tlapa said she observed defendant in the Audi for a minute while it was not moving. She did not see a second man in the vehicle.

¶ 14    The trial court found defendant guilty of possession of a stolen motor vehicle. In announcing its ruling, the court noted "there's a very clear explanation based on the evidence as

---

[1] Officer Tlapa's first name does not appear in the record.

to how [defendant's] wallet and ID got in the trunk." The court pointed out that two people identified defendant as being in the vehicle and that when Martell confronted him he reacted by using profanity towards Martell. Further, officers found defendant's identification in the recovered vehicle, corroborating the two identifications made in court.

¶ 15    Defendant filed a motion for a new trial, which the court denied. In denying the motion, the court noted that it found that Martell was credible, and that defendant's property in the recovered vehicle linked him to it. The court sentenced defendant to 78 months in prison with credit for 399 days served. Defendant filed a motion to reconsider sentence which was denied.

¶ 16    On appeal, defendant contends that the State failed to prove him guilty beyond a reasonable doubt of possession of a stolen motor vehicle. When reviewing a sufficiency of the evidence claim, our sole inquiry is whether, after viewing the evidence in a light most favorable to the State, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt of the essential elements of the crime. *People v. Davison*, 233 Ill. 2d 30, 43 (2009). In conducting this analysis, we will not retry the defendant. *People v. Cox*, 195 Ill. 2d 378, 387 (2001). Rather, it is the trier of fact's responsibility to assess witness credibility, resolve any conflicts in testimony, and weigh and draw inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). A defendant's criminal conviction will not be reversed on appeal unless we find that the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *People v. Evans*, 209 Ill. 2d 194, 209 (2004).

¶ 17    To sustain a conviction for possession of a stolen motor vehicle, the State must prove beyond a reasonable doubt that defendant: (1) possessed the vehicle, (2) was not entitled to such

possession, and (3) knew the vehicle was stolen. 625 ILCS 5/4-103(a)(1) (West 2014); *Cox*, 195 Ill. 2d at 391.

¶ 18    Defendant does not challenge the sufficiency of the evidence to establish the second or third elements of the offense. Instead, he argues solely that the State did not prove beyond a reasonable doubt that he was in possession of Martell's stolen vehicle. Specifically, he maintains the evidence presented was insufficient to establish that the Audi he was seen driving was Martel's Audi because the State did not introduce sufficient identifying characteristics into evidence, such as a license plate number or vehicle identification number (VIN). Defendant also adds that the State did not offer evidence of unique features that allowed Martell to identify either the vehicle defendant was seen driving or the recovered vehicle.

¶ 19    The State need not prove ownership of a stolen vehicle. *People v. Smith*, 226 Ill. App. 3d 433, 438 (1992). However, the State must prove that someone other than the defendant had a superior interest in the vehicle identified in the indictment. *People v. Fernandez*, 204 Ill. App. 3d 105, 109 (1990). This requirement may be met through circumstantial evidence, and the reasonable inferences drawn therefrom. *Id.* "When the State uses evidence of ownership to prove a vehicle was stolen, it must show that the defendant possessed the same vehicle owned by the complainant." *People v. Frazier*, 2016 IL App (1st) 140911, ¶ 18 (citing *Smith*, 226 Ill. App. 3d at 438). In the absence of proof of ownership, the State can use chain of custody evidence which links the recovered vehicle to the vehicle named in the indictment. *Smith*, 226 Ill. App. 3d at 438 (citing *Fernandez*, 204 Ill. App. 3d at 109).

¶ 20    Viewing the evidence in a light most favorable to the State, we conclude that the State proved beyond a reasonable doubt that defendant possessed the stolen vehicle. While defendant

correctly observes that evidence of a stolen vehicle's make and model, without more, is insufficient to prove ownership (*People v. Walker*, 193 Ill. App. 3d 277, 279 (1990)), in the instant case, make and model were not the only evidence of the stolen vehicle's identity. Rather, the circumstantial evidence and the reasonable inferences drawn therefrom were sufficient for a rational trier of fact to conclude that defendant possessed Martell's Audi.

¶ 21    Martell testified that he owned a 2005 silver Audi A4 1.8 Turbo. Rodriguez testified that her building kept surveillance video of the street where the Audi was parked, and that that video accurately captured her standing outside her house. That same video also captured the backs of two men as they stole Martell's Audi. Martell testified to seeing two Hispanic men driving in his Audi near his apartment shortly after it was stolen. Martell believed it was his Audi because he recognized "familiarities" of the car. He followed the car and confronted the driver, whom he identified as defendant. Upon informing defendant that he was driving his car, defendant fled the scene and Martell called the police. Tlapa testified that she called the dispatcher and that the license plate on the car that defendant was driving matched that of the stolen vehicle. Martell and Tlapa both identified defendant as the driver. Moreover, Martell's car was equipped with a tracking device that ultimately helped the officers locate the vehicle. Martell identified the recovered Audi as his own even though it had been "totaled." Inside of the recovered Audi, there was a card with defendant's name on it. Taken as a whole, this evidence allows for the reasonable inference that the car defendant possessed was the same one that was stolen from Martell. See *People v. Tucker*, 186 Ill. App. 3d 683, 691-92 (1989) (affirming conviction where there was testimony that a green Buick Park Avenue with Louisiana license plates was stolen and the defendant was seen in a Buick Park Avenue with Louisiana license plates).

¶ 22　　In reaching this conclusion, we are not persuaded by the cases cited by defendant because they fall far short of the evidence presented in this case. See *People v. Hope*, 69 Ill. App. 3d 375, 380 (1979) (reversing conviction where the evidence established that a 1976 white Oldsmobile 98 was reported stolen and that the defendant was in a 1976 white Oldsmobile 98 without any other identifying information); *People v. Stone*, 75 Ill. App. 3d 571, 574 (1979) (reversing conviction for theft over $150 where the arresting officer testified that he "found a green car" and "ran a check on the license plates," revealing it was registered to the car-owner's last name, but did not offer any other identifying information, and many people could have that last name); *People v. Fernandez*, 204 Ill. App. 3d 105, 109 (1990) (reversing conviction where the evidence established that a 1984 Mazda with a particular VIN was stolen and a witness saw the defendant with a red Mazda RX7 without any other identifying information); *People v. Acevedo*, 5 Ill. App. 3d 968, 969-70 (1972) (reversing conviction for criminal trespass to a vehicle where the car-owner testified that his 1963 Chevrolet was stolen but there was no identifying evidence that the defendant was in that particular vehicle).

¶ 23　　For the reasons stated, we affirm the judgment of the circuit court of Cook County.

¶ 24　　Affirmed.