THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RALPH T. WRIGHTNER, Defendant-Appellant.

Third District   No. 3—90—0727

Opinion filed September 30, 1991.

Drew Parker, of Parker & Halliday, of Peoria, for appellant.

Kevin W. Lyons, State's Attorney, of Peoria (Rita Kennedy Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BARRY delivered the opinion of the court:

Defendant Ralph T. Wrightner appeals from his convictions for the offenses of attempted first degree murder, aggravated unlawful restraint, armed violence, and aggravated battery and from his five-year sentence on the aggravated battery conviction to be served concurrently with a 25-year sentence on the attempted murder conviction.

According to the testimony at defendant's jury trial, on March 15, 1989, he followed his former wife and her 12-year-old daughter in his car, bumping their car once from the rear, and finally, when she stopped next to a Peoria police station and began honking her horn, he approached her car with a gun and fired at the driver's window. The glass shattered, and the bullet struck the victim in the head, lodging just under her scalp and not penetrating her skull. After the shot was fired, the victim continued to honk the horn, and defendant stood by her car with a gun pointing at her head until a police officer arrived and persuaded him to drop his gun. He was then arrested.

Defendant was initially represented by private counsel, and later a different attorney took over defendant's representation. After the second attorney withdrew, the public defender was appointed and decided to pursue an insanity defense. Psychiatric exams were scheduled with doctors for both the State and defendant. The changes in counsel and scheduling of psychiatric exams necessitated a series of delays in the date of trial.

The original date set for trial was June 5, 1989, and after many postponements, the trial court set August 13, 1990, as trial date. On August 2 and again on August 13 defendant indicated a desire for private counsel. Both times, the trial court stated that new counsel must be prepared for trial on August 13 as no more continuances would be granted. On August 13, the public defender was present and prepared for trial. Private counsel was also present, but, since he was not prepared for trial, he elected not to enter an appearance when defendant's request for a continuance was denied.

The trial proceeded with the witnesses to the event, including the victim and her daughter, testifying as to what happened. Defendant testified about his mental state on the day of the crime, and his doctor presented a diagnosis of schizophrenia with paranoia and depression. The State's doctor, on the other hand, found that defendant was depressed and had low self-esteem but no schizophrenia. The jury returned a verdict of guilty on all counts of the indictment.

■ Defendant's first contention is that he was denied his constitutional right to have counsel of his choice when the trial court refused to allow a 60-day continuance for new counsel to prepare for trial. This issue is waived for purposes of appeal because it was not included in defendant's post-trial motion. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) However, even if it were not waived, we would affirm the ruling of the trial court.

As defendant notes, the question of granting a continuance is a matter within the discretion of the trial court, and the only issue on review is whether the court abused that discretion. (*People v. Capers* (1989), 186 Ill. App. 3d 367, 542 N.E.2d 528.) Defendant's right to counsel of his choice does not permit him to unreasonably interfere with the orderly process of judicial administration, and, therefore, the proper exercise of the court's discretion requires a balancing of the public need for efficient administration of justice against the defendant's fundamental right to be represented by counsel of his choice. *People v. Holmes* (1987), 155 Ill. App. 3d 562, 508 N.E.2d 405.

In the case before us, defendant had many months to acquire private counsel after the public defender was appointed in November of 1989. Considering the number of delays already granted to defendant, the trial judge here properly exercised his discretion when he refused to allow another delay after more than one year of repeated continuances.

Next, defendant contends that the five-year sentence for aggravated unlawful restraint should be vacated because that crime was a part of the same transaction that gave rise to the crime of attempted first degree murder. The State argues that defendant restrained his victim by continuing to point his gun at her after he shot her and that this act of restraint was separate from the act of shooting which was the basis of the attempted murder offense.

According to the testimony of the victim, after the driver's window was shattered by the first shot from defendant's gun, she attempted to climb into the back seat of her car in order to put the seat between herself and defendant. She could see defendant continuing to point the gun at her and then hitting the gun. Finally, she heard a police officer shout, "Freeze." A short time later, defendant dropped the gun.

The officer testified that he had gotten into his police car behind the station when he heard a horn honking. He drove around the building to see what was causing the noise, and he heard a gunshot. He parked his car, got out of his car, and saw defendant pointing his gun at the driver of a stopped car. The officer pointed his gun at defend-

ant and ordered him to drop his gun. After several warnings, defendant dropped the gun.

■ The trial court obviously concluded that defendant's conduct in continuing to point his gun at the victim until the police officer arrived on the scene was sufficient to find that a separate crime had been committed. The facts here are similar to those in *People v. McNutt* (1986), 146 Ill. App. 3d 357, 496 N.E.2d 1089, where defendant was convicted of both unlawful restraint and attempted murder. There the defendant had pinned the victim's arms against her body and held her while a colleague choked her with a rope, and then the defendant sat on her legs while he and others stabbed her. The reviewing court there ruled that the acts of unlawful restraint were separate and distinct from those giving rise to the attempted murder charge, and that the conviction and sentence for both attempted murder and unlawful restraint should be affirmed.

Defendant relies upon a number of decisions involving the crime of rape to support his contention that here both the attempted murder and the unlawful restraint arose from the same act. One such case is *People v. Jones* (1983), 114 Ill. App. 3d 576, 449 N.E.2d 547, where the defendant ran after the victim, caught her and prevented her escape, dragged her into a park, and raped her. The reviewing court concluded that the unlawful restraint and rape were all a part of one criminal act. Accord *People v. Bachman* (1981), 92 Ill. App. 3d 419, 414 N.E.2d 1369; *People v. Coleman* (1980), 83 Ill. App. 3d 429, 403 N.E.2d 1266; contra *People v. Leonhardt* (1988), 173 Ill. App. 3d 314, 527 N.E.2d 562 (affirming a conviction for unlawful restraint in addition to a conviction for rape).

Rape cases present a special situation in that the physical restraint of the victim against her will is an essential element of the crime of rape, and a judgment of conviction may not be entered for lesser included offenses. (*People v. Williams* (1983), 115 Ill. App. 3d 276, 250 N.E.2d 851.) Murder or attempted murder by shooting with a gun, on the other hand, can be accomplished without physical restraint of the victim prior to the attack. Conviction for unlawful restraint may be proper where the restraint was an incidental act separate from the other offenses committed and required proof of different elements. *People v. Williams* (1986), 143 Ill. App. 3d 658, 493 N.E.2d 362, *appeal denied* (1987), 113 Ill. 2d 584, 505 N.E.2d 360.

In the instant case, the unlawful restraint conviction was based upon separate acts occurring after the gunshot which gave rise to his conviction for attempted murder. Considering all the circumstances,

we cannot say that the trial court erred in entering a judgment of conviction and sentence for unlawful restraint in this case.

We affirm the convictions and sentences entered in the circuit court of Peoria County.

Affirmed.

STOUDER, P.J., and HAASE, J., concur.