# Illinois Official Reports

## Appellate Court

---

### *People v. Daniel*, 2014 IL App (1st) 121171

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ASHTON DANIEL, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-1171 |
| Filed | May 22, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's armed robbery conviction was affirmed where the identification procedures were not unduly suggestive, his guilt was established beyond a reasonable doubt, and the prosecution's opening statement and closing argument were not improper or prejudicial; further, defendant's sentence to 34 years' imprisonment was not an abuse of discretion, the trial court's error in instructing the jury on armed robbery with a dangerous weapon rather than armed robbery with a firearm was forfeited and did not rise to the level of plain error, and the *Apprendi* error that occurred when defendant's use of a firearm during the armed robbery was not submitted to the jury when it was used to enhance his sentence was also forfeited and did not constitute plain error; however, defendant's conviction for unlawful restraint arising from the same incident as the armed robbery was vacated pursuant to the one-act, one-crime doctrine. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-15889; the Hon. Nicholas Ford, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, Lindsey J. Anderson, and S. Emily Hartman, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Michelle Katz, Kathleen Warnick, and Susanna Bucaro, Assistant State's Attorneys, of counsel), for the People. |

| Panel | JUSTICE EPSTEIN delivered the judgment of the court, with opinion. Justices Fitzgerald Smith and Lavin concurred in the judgment and opinion. |

**OPINION**

¶ 1     Following a jury trial, defendant Ashton Daniel was convicted of armed robbery and aggravated unlawful restraint and sentenced to concurrent 34- and 5-year prison terms. His convictions stem from the May 28, 2010, robbery of Ayoob Shafi's store. Defendant raises eight issues on appeal: (1) the photo array and lineup identification procedures were unduly suggestive; (2) the State failed to prove him guilty beyond a reasonable doubt; (3) the State made improper and prejudicial comments during opening statement and closing argument; (4) his sentence is excessive; (5) his aggravated unlawful restraint conviction violates the one-act, one-crime doctrine; (6) the jury was not properly instructed regarding armed robbery with a firearm; (7) the jury did not make the requisite finding to support a 15-year firearm enhancement; and (8) he was improperly assessed a $200 DNA indexing fee. We vacate defendant's aggravated unlawful restraint conviction, because it was carved from the same physical acts as his armed robbery conviction. We also vacate his $200 DNA indexing fee under *People v. Marshall*, 242 Ill. 2d 285 (2011), because defendant's DNA was previously obtained and indexed. We otherwise affirm defendant's conviction and sentence.

¶ 2                                    BACKGROUND

¶ 3     Shafi and Naveed Khan were working in the rear office of Shafi's South Side Health Food Store at 8609 South Cottage Grove Avenue in Chicago, Illinois. At approximately 3:20 p.m., Shafi met a customer at the front counter and agreed to check his Link card balance.[1] After Shafi swiped the card, the man drew a gun and demanded money. Shafi removed money from his cash register, but the man ordered Shafi to lie on the ground, threatened to shoot him, and removed additional money from the register. At this point, a second offender entered the store. The first man ordered Shafi to crawl to the back of the store and kicked and

_____

[1]"A Link card is a public aid card that gives an individual a certain amount of cash and food stamps." *People v. Sterling*, 357 Ill. App. 3d 235, 239 (2005).

beat him along the way. He demanded more money, and Shafi relinquished his wallet. The man placed his gun in Shafi's mouth and said that he would shoot if Shafi talked. The offenders then broke down the door to the rear office and discovered Khan. While they threatened Khan, Shafi quickly exited through the front door. The two men briefly chased Shafi, but soon fled the scene, absconding with between $450 and $500. The offender left his Link card in Shafi's store.

¶ 4　　Shafi described the offender to police as a 5-foot-7-inch, 200- or 210-pound, dark-skinned black male between 20 and 25 years old and told Detective Mark Pacelli that he had previously seen the man in his store. Pacelli also learned that the Link card belonged to defendant and had been used on May 12, 2010–nearly two weeks before the offense. He also learned defendant had reported the Link card stolen on June 10, 2010–nearly two weeks after the offense. Shafi provided Pacelli with surveillance footage from both May 12 and May 28, 2010.

¶ 5　　On June 16, 2010, Shafi identified defendant in a photo array, stating that "the gentleman in picture number 2 looked like the offender, but he could not be a hundred percent certain from the photograph" and "would need to see the individual in person to make the identification." On August 22, 2010, following defendant's arrest for an unrelated offense, Shafi identified defendant in a five-person lineup. Khan did not view the lineup, because it was a religious holiday.

¶ 6　　Prior to trial, defendant moved to suppress Shafi's identification. At the hearing on the motion, the parties stipulated that Shafi described the offender as a black male, 5 feet 8 inches to 5 feet 10 inches tall, 200 to 210 pounds, and between 20 and 25 years old. The parties further stipulated that Shafi viewed a photo array on June 16, 2010, and identified defendant, but stated that "he could not be certain from the picture" and "would need to see the offender in person." Shafi subsequently viewed a lineup and identified defendant. Defendant argued that the identification procedure was unduly suggestive, where he was the only person in both the photo array and the lineup. The trial court denied defendant's motion, and the case proceeded to trial.

¶ 7　　Shafi and Khan identified defendant at trial. In addition to presenting the testimony of Shafi, Khan, and several police officers, the State admitted photographs of the scene and Shafi's injuries; surveillance footage from May 28, 2010; still photographs taken from the May 12 and May 28, 2010, surveillance videos; a copy of the June 16, 2010, photo array; and a photograph of the August 22, 2010 lineup. Defendant presented no evidence. The jury found defendant guilty of armed robbery and aggravated unlawful restraint. Defendant was sentenced to concurrent terms of 34 and 5 years' imprisonment. He timely appealed.

¶ 8　　　　　　　　　　　　　　　　ANALYSIS
¶ 9　　　　　　　　　　　　　　Identification Procedures
¶ 10　　Defendant argues that Shafi's pretrial and in-court identifications were tainted by improper identification procedures and must be suppressed. According to defendant, Shafi's identification three months after the offense was based, not on his independent recollection,

but on the May 12, 2010, surveillance footage that police improperly encouraged Shafi to view. Defendant further argues that he was dissimilar to the other subjects in the photo array, and he was the only subject in common between the photo array and lineup. The State responds that the identification procedures were proper, and Shafi identified defendant because he had seen defendant in his store on previous occasions and had ample opportunity to observe him during the offense. We hold that the identification procedures here were not impermissibly suggestive.

¶ 11    When reviewing a trial court's ruling on a motion to suppress, we accord great deference to the trial court's factual findings and will not disturb those findings unless they are against the manifest weight of the evidence. *People v. Sorenson*, 196 Ill. 2d 425, 431 (2001). We review the ultimate legal challenge *de novo*. *Id.*

¶ 12    "The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." *United States v. Wade*, 388 U.S. 218, 228 (1967). Thus, Illinois mandates that photo array suspects "not appear to be substantially different from 'fillers' or 'distracters' in the *** photo spread, based on the eyewitness' previous description of the perpetrator, or based on other factors that would draw attention to the suspect." 725 ILCS 5/107A-5 (West 2010). On appeal, however, defendant bears the burden of proving that a pretrial identification was impermissibly suggestive. *People v. Brooks*, 187 Ill. 2d 91, 126 (1999). Even where a defendant meets this burden, the State may show by clear and convincing evidence that the identification was based on the witness's independent recollection. *Id.* In reviewing a trial court's ruling on a motion to suppress, we may consider evidence presented at the hearing on the motion to suppress, as well as evidence presented at trial. *Id.* at 127-28.

¶ 13    Here, at the hearing on defendant's motion to suppress, the parties stipulated that Shafi described the primary offender as a black male, 5 feet 8 inches to 5 feet 10 inches tall, 200 to 210 pounds, and between 20 and 25 years old. Upon viewing a photo array on June 16, 2010, Shafi identified defendant, but stated that "he could not be certain from the picture" and "would need to see the offender in person." Shafi later viewed a lineup and identified defendant, the only person present in both the photo array and lineup. The trial court denied defendant's motion to suppress, reasoning that suspects are often the only persons present in both the photo array and lineup of a given case. Shafi and Khan both identified defendant at trial.

¶ 14    Defendant raises several arguments on appeal. The State responds that defendant forfeited many of these arguments by failing to raise them in his motion to suppress. However, the issue raised on appeal need not be identical to that raised below. *People v. Lovejoy*, 235 Ill. 2d 97, 148 (2009). Rather, a claim is preserved if the trial court had an opportunity to address the essential claim. *Id.* Here, because the trial court had an opportunity to address defendant's essential claim, we reject the State's forfeiture argument and address this claim on its merits.

¶ 15    Defendant first argues that the photo array was unduly suggestive, because he was the only subject who fit Shafi's description to police. On the date of the offense, Shafi described the offender as a 5-foot-7-inch, 200- or 210-pound, dark-skinned black male between 20 and

25 years old. Each of the six persons represented in the photo array was a "dark-skinned black male" and, with one exception, appears to fall within the 20-to-25-year age range. Defendant complains that he appears shorter than the other photo array participants and was the only subject without facial hair. This claim fails, as the photo array displayed only headshots and contained no references to height. As to facial hair, each of the photo array subjects–including defendant–appears to have a thin mustache or goatee. None wore a full beard. Defendant does not stand out in this regard. Even if he did, Shafi's description of the offender had no mention of the presence or absence of facial hair. He further complains that he was the only person in the array wearing a white shirt similar to that worn by the offender. Yet half of the six subjects wore a white shirt. Each of the subjects has slightly different hair, features, and clothing, but all–including defendant–match Shafi's general description. Of course, it is evident that the clothes a person wears in a file photograph, especially one as common as a white shirt, would have little, if any, effect on an identification. The photo array in no way supports defendant's claim that "it is jarringly apparent that Daniel is the sole participant who is not like the others."

¶ 16    Defendant next contends that police improperly encouraged Shafi to view the May 12, 2010, surveillance video before identifying defendant. The record in this case utterly fails to support defendant's claim. At trial, Shafi admitted that he viewed the May 12, 2010, video before producing a copy for police. However, the testimony established only that police asked Shafi for a copy of the May 12 surveillance footage after they determined that someone had used defendant's Link card at Shafi's store on that date. There was no evidence that police encouraged Shafi to view the video prior to its production, nor any evidence that police told him that the person appearing in the May 12 video was the offender on May 28. Defendant's claim rests on a distortion of the record in this case.

¶ 17    Defendant further argues that he was the only "repeat player" in the identification procedures. That is, he was the only person in both the photo array and the lineup, increasing the chances that Shafi would identify him as the offender and rendering the identification procedures unduly suggestive. Illinois courts have repeatedly rejected this argument: "[l]ineups are not rendered inadequate *** merely because the defendant is the only individual in the lineup who was also in the" photo array. *People v. Johnson*, 149 Ill. 2d 118, 148 (1992); see also *People v. Curtis*, 262 Ill. App. 3d 876, 883-84 (1994) (same); *People v. Favors*, 254 Ill. App. 3d 876, 883 (1993) (same). We, too, hold that this fact alone does not render identification procedures impermissibly suggestive. Given the overwhelming difficulty of producing the same people in a photo array at a lineup, which is often held weeks or months later, to rule otherwise would compel police to eliminate one of these identification procedures, often to the detriment of suspects.

¶ 18    Defendant also complains that the lineup was unduly suggestive, because he stood "off to the right slightly away from the other four people," and because the police selected lineup participants from lockup who resembled defendant rather than tailoring the lineup to Shafi's descriptions to police. It is unclear why standing approximately four inches away from the other lineup participants–who, in turn, stood approximately one or two inches away from each other–would render a lineup unduly suggestive. Further, defendant concedes that police

- 5 -

chose persons from lockup on the basis of their resemblance to him. Police therefore complied with Illinois law, which requires that "[s]uspects in a lineup *** should not appear to be substantially different from 'fillers' or 'distracters' in the lineup." 725 ILCS 5/107A-5 (West 2010).

¶ 19     Defendant compares this case to *Foster v. California*, 394 U.S. 440 (1969). In *Foster*, the identifying witness viewed a lineup in which the defendant was six inches taller than any other lineup participant and was the only one wearing a leather jacket similar to the one worn by the robber. *Id*. at 441. Unable to identify the defendant in the lineup, the witness was allowed to confront the defendant one-on-one in an office at the police station. *Id.* Still unsure, the witness was allowed to view yet another lineup approximately one week later. *Id.* The defendant was the only person in common between the two lineups. *Id.* at 441-42. This case bears little resemblance to *Foster*. In *Foster*, the police refused to accept the witness's inability to identify the defendant as the robber and provided increasingly suggestive procedures until identification occurred. In this case, Shafi viewed a single, nonsuggestive lineup.

¶ 20     Defendant also contends that Shafi's in-court identification was "weak at best" and should be suppressed. Specifically, defendant claims that Shafi could not identify him in court until he stood up and walked around the courtroom. The record demonstrates, however, that this was due to a television blocking Shafi's view of defendant, not to any hesitation in identifying defendant.

¶ 21     Even if the identification procedures in this case had been impermissibly suggestive, there was strong evidence that Shafi identified defendant based on his own independent recollection. See *People v. McTush*, 81 Ill. 2d 513, 520 (1980) ("While it is the defendant's burden to establish that the pretrial confrontation was impermissibly suggestive [citation], once accomplished, the State may nevertheless overcome that obstacle, by a clear and convincing showing, based on the totality of the surrounding circumstances, that 'the witness is identifying the defendant solely on the basis of his memory of events at the time of the crime.' [Citation.]"). When evaluating identifications, Illinois courts look to (1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the victim upon identification; and (5) the length of time between the crime and the identification. *People v. Slim*, 127 Ill. 2d 302, 307-08 (1989) (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

¶ 22     Shafi had ample opportunity to observe defendant. He met defendant at the front counter, agreed to swipe his Link card, and handed him a pad in which to enter his personal identification before defendant drew a weapon. He had further opportunity to view defendant during the remainder of the offense, including the moment the defendant placed a gun in his mouth. As to the second factor, Shafi paid sufficient attention to the offender to recognize him as a returning customer. With the exception of weight, Shafi's description of defendant as a 5-foot-7-inch, 200- or 210-pound, dark-skinned black male between 20 and 25 years old was accurate. Indeed, when defendant was arrested approximately three months later, the arrest report described a 24-year old "male black," "5'8"," "156 lbs" with "Dark Brown

- 6 -

Complexion." The arrest report weight description was taken from defendant's driver's license and was not based on personal observation or use of a scale. While Shafi demonstrated slight uncertainty during the photo array procedure–he said he "could not be a hundred percent certain from the photograph" and "would need to see the individual in person to make the identification"–he exhibited no uncertainty during the lineup procedure. Further, Shafi's identification occurred within three months of the crime, and Shafi recognized the offender from a previous encounter at his store. Accordingly, we reject defendant's argument that the identification procedures in this case were unduly suggestive.

¶ 23                                  Reasonable Doubt

¶ 24    Defendant argues that the State failed to prove beyond a reasonable doubt that he was the offender. The State responds that two eyewitness identifications, defendant's Link card, and surveillance footage supported his convictions. We reject defendant's argument.

¶ 25    The State must prove each element of an offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 315-16 (1979); *In re Winship*, 397 U.S. 358, 361-64 (1970). Where a defendant alleges that the State failed to meet its burden, a reviewing court, considering the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime. *Jackson*, 443 U.S. at 318-19. We will not reverse a conviction unless the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of defendant's guilt. *People v. Evans*, 209 Ill. 2d 194, 209 (2004). As discussed above, when evaluating identifications, Illinois courts look to (1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the criminal; (4) the level of certainty demonstrated by the victim upon identification; and (5) the length of time between the crime and the identification. *People v. Slim*, 127 Ill. 2d at 307-08.

¶ 26    Shafi had ample opportunity to view the defendant. Shafi recognized defendant as a returning customer and accurately described him as a 5-foot-7-inch, dark-skinned black male between 20 and 25 years old. While Shafi demonstrated slight uncertainty during the photo array procedure, he exhibited no uncertainty during the lineup procedures. Shafi's identification occurred within three months of the crime. Khan's identification exhibited fewer indicia of reliability than Shafi's. Khan had little time to observe the offender, as he was locked in the office in the back of the store for much of the offense. When he viewed the offender, it was for a brief period of time before the offender pursued Shafi out of the store. Khan gave no description to police following the offense and identified defendant only at trial, nearly eight months after the offense. Had defendant's conviction turned solely on Khan's identification, defendant's argument would carry greater weight. However, defendant's conviction rested not only on Khan's identification, but Shafi's identifications, the Link card, and surveillance footage as well.

¶ 27    Defendant addresses the Link card and surveillance footage only briefly, arguing that they did not implicate him, because he "reported his Link card stolen" and "[t]he perpetrator in the video appears heavier than" him. Defendant reported his Link card stolen not before

but, rather, nearly two weeks after the offense. This fact renders the claim that the card was stolen largely inconsequential. The surveillance footage, taken from multiple cameras in the store, is certainly blurry at times. Nonetheless, it tends to support the conclusion that defendant was the offender in this case. Despite his contention to the contrary, the footage does not depict someone noticeably heavier than defendant.

¶ 28     A single, reliable eyewitness may be enough to sustain a conviction. *People v. Lewis*, 165 Ill. 2d 305, 356 (1995). Here, the State presented two eyewitnesses, defendant's Link card, and surveillance footage tying defendant to this offense. Viewing this evidence in the light most favorable to the prosecution, we cannot say that no rational trier of fact could have found beyond a reasonable doubt that defendant was the offender. *Jackson*, 443 U.S. at 318-19.

¶ 29                                   Comments by the Prosecution

¶ 30     Defendant argues that the State's assertions in opening statement and closing argument that defendant "shattered" or "destroyed" Shafi's "American dream" deprived him of a fair trial. The State responds that defendant forfeited this argument and, regardless of forfeiture, the statements were neither improper nor prejudicial. Because defendant failed to object at trial, we hold that defendant forfeited review of this issue. We further hold that the State's comments were not improper.

¶ 31     Defendant concedes that he failed to preserve this issue for appellate review. He argues, however, that we should review this issue under the plain-error doctrine. We must first determine whether error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 32     Initially, the parties disagree about the proper standard of review. As we observed in *People v. Hayes*, 409 Ill. App. 3d 612, 624 (2011), there appears to be a conflict among Illinois Supreme Court cases regarding the correct standard for reviewing remarks during argument. *People v. Wheeler*, 226 Ill. 2d 92, 121 (2007), and *People v. Sims*, 192 Ill. 2d 592, 615 (2000), suggest we should review this issue *de novo*, because the prosecutor's statements are reflected in the transcripts and are therefore undisputed, leaving only a legal question. *People v. Hudson*, 157 Ill. 2d 401, 441 (1993), suggests that the trial court is in a better position to rule on objections during closing argument, and the standard is therefore abuse of discretion. We need not take a position in this case, as defendant's claim fails under either standard. See *People v. Johnson*, 385 Ill. App. 3d 585, 603 (2008) ("[W]e do not need to resolve the issue of the appropriate standard of review at this time, because our holding in this case would be the same under either standard.").

¶ 33     Prosecutors are allowed a great deal of latitude during closing argument and may comment upon and draw reasonable inferences from the evidence presented. *Hudson*, 157 Ill. 2d at 441. They must refrain, however, from improper prejudicial arguments or comments. *Id.* Prosecutorial misconduct in closing argument warrants a new trial if the improper remarks were a material factor in the conviction. *People v. Linscott*, 142 Ill. 2d 22, 28 (1991). We must ask whether the jury could have reached a contrary verdict had the remarks not been made. *Id.*

¶ 34    Defendant complains of two comments, the first of which can be found in the prosecution's opening statement:

> "Ayoob Shafi *** came to this country for the American dream. He came here to make a better life for himself and to make a better life for his family. And he did that by opening a health food store. He opened this store hoping to achieve the American Dream.
>
> You're going to hear how his dreams were shattered by this man (indicating) on May the 28th of 2010."

The second arose in the State's argument in rebuttal:

> "He came here because he wanted a better life, he wanted to be successful. And once he got here he sought an education, and he sought the American dream and he opened a health food store at 8609 South Cottage Grove. This was his American dream that he sought which was destroyed by one man. And the evidence fully supports that it was, in fact, one man, the man who sits before you today, Ashton Daniel, who shattered his American dream ***."

Defendant also notes that he objected when "the State *** elicited evidence that Ayoob Shafi came to America for an education and a 'successful life,' after his mother died in 1982."

¶ 35    We hold that the State's comments did not constitute error. In *People v. Bass*, 220 Ill. App. 3d 230, 236, 252 (1991), the State elicited testimony and asserted both in opening statement and in closing argument that the decedent was pursuing his "American dream" by immigrating to the United States and opening his own bar, and the defendant destroyed that dream when he murdered him. *Id.* We held that "the argument and testimony defendant complains of were sufficiently brief and curtailed so as not to constitute a passionate appeal to the jurors' sympathies, and was a fair comment on the unfortunate circumstances and effect of the incident." *Id.* at 252; see also *People v. Enis*, 163 Ill. 2d 367, 409 (1994) (defendant received a fair trial, despite prosecutor's argument that decedent " 'came here from the Philippines *** to live her American dream' " but because of the defendant suffered " 'her American nightmare' ").

¶ 36    Here, as in *Bass*, the State's comments were brief and did not deny defendant a fair trial. Prosecutors are allowed a great deal of latitude during argument. *Hudson*, 157 Ill. 2d at 441. Although the prosecutor's arguments suffered from hyperbole and dramatic rhetorical flourishes, these incidents were isolated and not especially prejudicial. Nor was the brief background information regarding defendant's immigration and the death of his mother prejudicial. See *People v. Pasch*, 152 Ill. 2d 133, 199 (1992) (evidence regarding decedent's family not prejudicial, where isolated, sporadic, and incidental to other relevant testimony). Accordingly, the State's arguments in opening and closing were not improper. Error did not occur, therefore we need not engage in a plain-error analysis.

¶ 37                                    Excessive Sentence

¶ 38    Defendant argues that his 34-year sentence is excessive, where the trial court failed to consider that he maintained steady employment despite suffering an unstable childhood and,

later, drug addiction. The State responds that the trial court properly sentenced defendant within the statutory range. The trial court properly considered the evidence in mitigation, and therefore we agree with the State.

¶ 39    Illinois Supreme Court Rule 615(b)(4) gives reviewing courts the power to reduce a defendant's sentence. Ill. S. Ct. R. 615(b)(4) (eff. Jan. 1, 1967). However, a trial court's sentencing decision is entitled to great deference. *People v. Stacey*, 193 Ill. 2d 203, 209 (2000). Trial courts are in a far better position to assess a defendant's credibility, demeanor, general moral character, social environment, habits, and age. *People v. Fern*, 189 Ill. 2d 48, 53 (1999). A reviewing court must therefore not substitute its judgment for that of the trial court simply because it would have weighed the factors in aggravation and mitigation differently. *Id.* A reviewing court may not alter a defendant's sentence absent an abuse of discretion. *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). The trial court abuses its discretion where the sentence is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense. *Id.*

¶ 40    Defendant argues that "there is no indication that rehabilitation was considered as a goal" and lists three mitigating factors that, according to him, call for sentence reduction. First, he notes that he has suffered from drug and alcohol addiction and has expressed a desire to seek treatment. See *People v. Whealon*, 185 Ill. App. 3d 570, 574 (1989) (drug addiction may be considered a mitigating factor in certain cases). Defendant complains that "the court did not mention this factor in mitigation whatsoever." He also notes that he had an unstable childhood that included physical abuse and the involvement of the Department of Children and Family Services (DCFS). Finally, he recounts his work history, which includes work in the Job Corps, a pawn shop, and a rehabilitation center. He also obtained an unarmed security training certificate.

¶ 41    Trial courts are not required to expressly list each of the factors it considers during sentencing. *People v. Jones*, 2014 IL App (1st) 120927, ¶ 55. Rather, absent affirmative indication to the contrary, we must presume that the court considered all mitigating factors on the record. *Id.*; *People v. Tuduj*, 2014 IL App (1st) 092536, ¶ 112. Here, there is no evidence that the trial court failed to consider factors in mitigation. Defense counsel noted that defendant "was physically abused by his father from a young age, so much so that DCFS was called and he was taken into their custody and placed with his grandmother." Counsel also discussed defendant's employment history, indeed, in greater detail than defendant does on appeal. These facts were also included in his presentence investigation report, as was his drug and alcohol addiction.

¶ 42    After hearing this evidence, the trial court stated, "I am here considering the evidence presented at trial; the presentence investigation report, which I have read; the evidence offered in aggravated/mitigation; statutory factors in aggravation/mitigation; the financial impact of incarceration; as well as the arguments of the two attorneys that appeared here before me today ***." The court went on to expressly consider defendant's difficult childhood: "Obviously he was in a kind of destructive environment during the course of his youth, was involved in a series of fairly serious life changes, you know, non supportive

- 10 -

parents, numerous school changes. I am taking that into account." The court then described the vicious nature of the offense.

¶ 43    Armed robbery is a Class X felony, punishable by 6 to 30 years' imprisonment. 720 ILCS 5/18-2(a)(2) (West 2010). Where, as here, a defendant carries on or about his person or is otherwise armed with a firearm, 15 years must be added to the term of imprisonment. 720 ILCS 5/18-2(b) (West 2010). Thus, the statutory sentencing range in this case was 21 to 45 years' imprisonment. Defendant was sentenced to a 34-year term–near the center of the statutory range. Each of the factors in mitigation he listed was discussed by his attorney during sentencing or included in his presentence investigation report. Not only did the trial court state that it was considering all of the evidence in mitigation, it expressly discussed defendant's childhood. Given the record in this case, we cannot say that the trial court abused its discretion in sentencing defendant to 34 years' imprisonment.

¶ 44                              One Act, One Crime

¶ 45    Defendant argues that we should vacate his aggravated unlawful restraint conviction under the one-act, one-crime doctrine, where it stemmed from the same acts as his armed robbery conviction. The State responds that both convictions should stand, because defendant engaged in multiple acts. We agree with defendant and vacate his aggravated unlawful restraint conviction, because Shafi's restraint did not exceed that inherent in the armed robbery.

¶ 46    We review this issue *de novo*. *People v. Johnson*, 237 Ill. 2d 81, 97 (2010). Although defendant failed to preserve this issue, we may review one-act, one-crime claims under the plain-error doctrine. See *People v. Nunez*, 236 Ill. 2d 488, 493 (2010) (one-act, one-crime violations affect the integrity of the judicial process and may therefore be reviewed under the second plain-error prong); *In re Samantha V.*, 234 Ill. 2d 359, 378 (2009) (same).

¶ 47    Defendant argues in part that his aggravated unlawful restraint conviction cannot stand, because "there is no evidence here that any detention of Shafi had any *purpose* other than *** the armed robbery" and that, "in many [armed robbery] cases, the overriding *intent* of the offender is something other than detention." (Emphases in original.) Defendant's focus on purpose and intent is misplaced. Although Illinois courts once considered whether offenses were independently motivated to determine if multiple convictions were appropriate, our supreme court rejected the so-called "independent motivation test" in favor of the one-act, one-crime doctrine in 1977. See *People v. King*, 66 Ill. 2d 551, 560, 566 (1977) ("We *** reject the 'independent motivation' test as a standard for determining whether multiple convictions and concurrent sentences are permissible.").

¶ 48    In *People v. King*, our supreme court explained that "[p]rejudice results to the defendant *** where more than one offense is carved from the same physical act." *King*, 66 Ill. 2d at 566. The court defined an "act" as "any overt or outward manifestation which will support a different offense." *Id.* In *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996), the court explained that, in addressing one-act, one-crime claims, we must first determine whether a defendant's conduct constituted separate acts or a single act. *Id.* at 186. If we determine that the

defendant committed multiple acts, we must determine whether any of the offenses were lesser-included offenses. *Id.* If so, multiple convictions are also improper. *Id.* Put another way, multiple convictions may stand only where the defendant committed separate physical acts and none of the offenses are lesser-included offenses. *People v. Harvey*, 211 Ill. 2d 368, 389-90 (2004).

¶ 49      Aggravated unlawful restraint is not a lesser-included offense of armed robbery. *People v. Crespo*, 118 Ill. App. 3d 815 (1983). We must focus, then, on whether defendant's convictions for armed robbery and aggravated unlawful restraint were carved from the same physical act. The State charged defendant with two counts, both pertaining to Shafi. The armed robbery count alleged the following:

> "Ashton Daniel committed the offense of armed robbery in that HE, KNOWINGLY TOOK PROPERTY, TO WIT: UNITED STATES CURRENCY, FROM THE PERSON OR PRESENCE OF AYOOB SHAFI, BY THE USE OF FORCE OR BY THREATENING THE IMMINENT USE OF FORCE AND DEFENDANT CARRIED ON OR ABOUT HIS PERSON OR WAS OTHERWISE ARMED WITH A FIREARM ***."

The aggravated unlawful restraint count alleged the following:

> "Ashton Daniel committed the offense of AGGRAVATED UNLAWFUL RESTRAINT in that HE, KNOWINGLY WITHOUT LEGAL AUTHORITY DETAINED AYOOB SHAFI, WHILE USING A DEADLY WEAPON, TO WIT: A FIREARM."

Although the State could have charged defendant with Khan's unlawful restraint or battery, it chose not to. See *People v. Crespo*, 203 Ill. 2d 335, 345 (2001) ("the indictment must indicate that the State intended to treat the conduct of defendant as multiple acts in order for multiple convictions to be sustained"). Thus, our analysis is limited to whether defendant's conduct toward Shafi constituted multiple acts.

¶ 50      A person commits the offense of aggravated unlawful restraint when he or she knowingly without legal authority detains another while using a deadly weapon. 720 ILCS 5/10-3(a), 10-3.1(a) (West 2010). The key concern for unlawful restraint is whether a person was detained, that is, whether that person's "freedom of locomotion was *** impaired." *People v. Satterthwaite*, 72 Ill. App. 3d 483, 485 (1979). Neither physical force nor the presence of a weapon is required. *People v. Bowen*, 241 Ill. App. 3d 608, 627-28 (1993); see also 1 John F. Decker & Christopher Kopacz, Illinois Criminal Law § 7.04(a), at 7-23 (5th ed. 2012) (collecting cases). As charged in the instant case, a person commits armed robbery when he or she knowingly takes property from the person or presence of another by the use of force or by threatening the imminent use of force and he or she carries on or about his or her person or is otherwise armed with a firearm. 720 ILCS 5/18-1, 18-2 (West 2010).

¶ 51      In determining whether a defendant committed a separate physical act of unlawful restraint, Illinois courts have looked at whether the restraint was "independent" of the physical act underlying the other offense (see, *e.g.*, *People v. Bowen*, 241 Ill. App. 3d 608, 628 (1993); *People v. Leonhardt*, 173 Ill. App. 3d 314, 322 (1988); *People v. Alvarado*, 235

Ill. App. 3d 116, 117 (1992)); went "further than" the restraint inherent in the other offense (see, *e.g.*, *People v. Yeast*, 236 Ill. App. 3d 84, 90 (1992)); or occurred simultaneously (see, *e.g.*, *People v. Wrightner*, 219 Ill. App. 3d 231 (1991)). In *People v. Kuykendall*, 108 Ill. App. 3d 708, 710 (1982), the court observed that "[n]early every offense against the person necessarily involves a degree of restraint; for example, a rape precludes mobility; and to take an extreme example, a homicide precludes mobility–a corpse cannot move from one place to another."

¶ 52    In *People v. Lee*, 376 Ill. App. 3d 951, 953 (2007), the defendant approached a husband and wife and their 11-year-old son as they left a liquor store. *Id*. He displayed a gun and demanded money. *Id*. The wife screamed, and the husband handed him $10. *Id*. Defendant entered a waiting car and departed. *Id*. He was convicted of three counts of aggravated unlawful restraint–each pertaining to one of the three family members–and one count of armed robbery. *Id*. at 952. Defendant argued on appeal that his aggravated unlawful restraint convictions were based on the same physical act as his armed robbery conviction in violation of the one-act, one-crime doctrine. *Id*. at 956. The State conceded that the aggravated unlawful restraint conviction pertaining to the husband was carved from the same physical act as the armed robbery conviction. *Id*. at 957. The appellate court agreed and vacated that conviction. *Id*. The court refused to vacate the counts pertaining to the wife and child, however, because separate convictions based on one act are proper when there are multiple victims. *Id*.

¶ 53    In *People v. Williams*, 143 Ill. App. 3d 658 (1986), the defendant approached a woman as she entered her car, displayed a gun, and told her to get inside. *Id*. at 660. He ordered the owner to sit down and place her head between her legs. *Id*. Defendant then drove around for 20 or 30 minutes before taking money from the owner's purse and ordering her out of the car. *Id*. Defendant was convicted of armed robbery and unlawful restraint. *Id*. On appeal, defendant argued that his unlawful restraint conviction should be vacated because it was "incidental" to the armed robbery. *Id*. at 667. The appellate court concluded that "defendant's [unlawful restraint] conviction was proper because the conduct comprising the offense was an act separate from the armed robbery, was not necessary to effectuate the armed robbery, exceeded the force requirement of armed robbery, and each of the offenses required proof of different elements." *Id*.; see also *People v. Crespo*, 118 Ill. App. 3d 815, 822-24 (1983) (codefendants committed two separate acts: armed robbery by producing a knife upon entering tavern and threatening to shoot anyone who withheld money, and unlawful restraint by ordering patrons onto floor and holding an employee at knifepoint).

¶ 54    Here, defendant's aggravated unlawful restraint conviction was carved from the same physical act as his armed robbery conviction. Although defendant restrained Shafi, that restraint was not a separate or independent physical act. Rather, the armed robbery in this case was ongoing until Shafi escaped through the front door. Defendant took property from Shafi during three closely related interactions, each by the use or threat of force. Defendant first threatened the imminent use of force by displaying a gun. Shafi then removed money from the register. Defendant again threatened the imminent use of force, ordering Shafi to lie on the ground and threatening to shoot him if he moved. He then removed more money from

- 13 -

the register. Finally, defendant kicked and beat Shafi and demanded more money as Shafi crawled toward the back of the store. Shafi surrendered his wallet, and defendant placed a gun in Shafi's mouth.

¶ 55    There was, in short, no separate act of restraint in this case. Defendant robbed Shafi of the money in the cash register twice, and then robbed him of his wallet, all the while threatening or using force. As with the armed robbery of the husband in *Lee*, the restraint effectuated by defendant was inherent in the armed robbery, not independent of it. Unlike the defendant in *Williams*, defendant here did not restrain any person for 20 or 30 minutes in addition to the armed robbery. Instead, defendant restrained Shafi from the beginning until the end of the armed robbery–that is, from the moment he displayed a gun and demanded money, until the moment he took Shafi's wallet and placed a gun in his mouth. We therefore hold that defendant's aggravated unlawful restraint conviction must be vacated, where it rested on the same physical act as his armed robbery conviction.

¶ 56                                    Jury Instructions

¶ 57    Defendant asserts that, although he was charged with armed robbery with a *firearm*, the trial court improperly instructed the jury on the offense of armed robbery with a *dangerous weapon*. The State responds that defendant forfeited appellate review of this issue. We hold that, although the trial court erred, defendant forfeited this issue, and the error does not rise to the level of plain error.

¶ 58    Jury instructions are intended to guide the jury and assist in its deliberations and in reaching a proper verdict. *People v. Parker*, 223 Ill. 2d 494, 501 (2006). Instructions should be construed as a whole, and we must first determine whether the instructions fairly, fully, and comprehensively advised the jury of the relevant legal principles. *Id.* We review *de novo* whether jury instructions accurately convey the law. *People v. Watt*, 2013 IL App (2d) 120183, ¶ 30; *Parker*, 223 Ill. 2d at 501.

¶ 59    Here, defendant was charged with committing armed robbery while carrying a "firearm," but the definition instruction given to the jury discussed being armed with a dangerous weapon:

> "A person commits the offense of armed robbery when he, while carrying on or about his person, or while otherwise armed with a *dangerous weapon*, knowingly takes property from the person or presence of another by the use of force or by threatening the imminent use of force." (Emphasis added.) Illinois Pattern Jury Instructions, Criminal, No. 14.05 (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 14.05).

Similarly, the instruction listing the elements for armed robbery mentioned a dangerous weapon, rather than a firearm:

> "To sustain the charge of armed robbery, the State must prove the following propositions:
>
> First: That the defendant knowingly took property from the person or presence of Ayoob Shafi; and

- 14 -

Second: That the defendant, did so by the use of force or by threatening the imminent use of force; and

Third: That the defendant carried on or about his person a *dangerous weapon* or was otherwise armed with a firearm at the time of the taking." (Emphasis added.)

IPI Criminal 4th No. 14.06. The trial court delivered these instructions both orally and in writing.

¶ 60    Defendant contends that these instructions misstate the law, because armed robbery with a "firearm" and armed robbery with a "dangerous weapon other than a firearm" fall under different subsections of the armed robbery statute. Compare 720 ILCS 5/18-2(a)(2) (West 2010), with 720 ILCS 5/18-2(a)(1) (West 2010). However, he did not preserve this issue for appellate review. In order to preserve an error in jury instructions for appeal, a criminal defendant must make a specific objection at the time of the instructions conference and raise the issue in a posttrial motion. *People v. Watt*, 2013 IL App (2d) 120183, ¶ 33 (citing *People v. Enoch*, 122 Ill. 2d 176, 186 (1988)). Defendant concedes that he neither objected to the jury instructions during the conference nor raised the issue in a posttrial motion. Nonetheless, he argues that we should review the issue as plain error. *People v. Thompson*, 238 Ill. 2d 598, 611 (2010) ("When a defendant has forfeited appellate review of an issue, the reviewing court will consider only plain error."). As we discussed above, the plain-error doctrine "permits a reviewing court to consider unpreserved error when (1) a clear or obvious error occurred and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurred and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Sargent*, 239 Ill. 2d 166, 189 (2010). We must first decide whether the jury instructions constitute error. *Piatkowski*, 225 Ill. 2d at 565.

¶ 61    In *People v. Watt*, 2013 IL App (2d) 120183, ¶¶ 1, 29, the defendant was charged with and convicted of armed robbery while carrying a firearm pursuant to section 18-2(a)(2). See 720 ILCS 5/18-2(a)(2) (West 2010). However, the trial court instructed the jury regarding armed robbery with a dangerous weapon under section 18-2(a)(1) of the Illinois Criminal Code of 1961 (720 ILCS 5/18-2(a)(1) (West 2010)). *Watt*, 2013 IL App (2d) 120183, ¶ 31. On appeal the *Watt* court held that these jury instructions "did not accurately state the law," because they failed to reflect substantive changes in an amendment to the armed robbery law made in January of 2000. *Id.* ¶ 32. Prior to the 2000 amendment, a defendant committed armed robbery if, at the time of the offense, he carried "a dangerous weapon." *People v. Washington*, 2012 IL 107993, ¶ 6. The amendment created two ways to commit robbery: robbery with a "firearm" and robbery with a "dangerous weapon other than a firearm." *Id.*; 720 ILCS 5/18-2(a)(1), (2) (West 2010). The *Watt* court held that the trial court erred in giving the outdated instructions. *Watt*, 2013 IL App (2d) 120183, ¶ 36. We agree with the *Watt* court and hold it was error for the trial court to give IPI Criminal 4th Nos. 14.05 and 14.06. See also *People v. Ware*, 2014 IL App (1st) 120485, ¶ 18 (reaching the same result).

¶ 62    We turn now to our plain-error analysis. Defendant contends that the first prong is satisfied, because the evidence is closely balanced, and the jury could have found that he was

carrying a mere bludgeon or some other type of dangerous weapon, and not a firearm. The State counters that there was ample evidence to convict defendant and to show that he was armed with a firearm. We agree with the State. There was strong evidence of defendant's guilt and overwhelming evidence that he was armed with a firearm. Indeed, it was undisputed at trial that the offender carried a firearm. The evidence was not closely balanced, and defendant has not met the first plain-error prong.

¶ 63        Defendant also argues that the error in the jury instructions is serious enough that it satisfies the second prong. See *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005). Illinois courts have narrowed the second prong to errors that are " 'structural,' *i.e.*, 'a systemic error which serves to erode "the integrity of the judicial process and undermine the fairness of the defendant's trial." ' " *Watt*, 2013 IL App (2d) 120183, ¶ 38 (quoting *People v. Glasper*, 234 Ill. 2d 173, 197-98 (2009), quoting *Herron*, 215 Ill. 2d at 186); see *Neder v. United States*, 527 U.S. 1, 8 (1999) ("we have found an error to be 'structural,' and thus subject to automatic reversal, only in a 'very limited class of cases' "); *Thompson*, 238 Ill. 2d at 613 ("In *Glasper*, this court equated the second prong of plain-error review with structural error ***."). Despite the fact that the jury instructions here were based on an earlier version of the robbery statute, and thus misstated the law, such an error does not fall within the class of structural errors or rise to the level of plain error. *Watt*, 2013 IL App (2d) 120183, ¶ 39. Accordingly, defendant has failed to satisfy the second prong of the plain-error doctrine as well. Having not met either prong, defendant's claim must fail.

¶ 64                                                    *Apprendi*

¶ 65        Defendant next argues that the fact used to enhance his sentence–use of a firearm during the armed robbery–was not submitted to the jury, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Defendant concedes that he failed to preserve this issue for appellate review, but urges us to review this issue under the plain-error doctrine. The State contends that, even if error occurred, it did not rise to the level of plain error. We find that an *Apprendi* violation occurred, but agree with the State that defendant cannot meet either plain-error prong.

¶ 66        Before we address defendant's plain-error arguments we must determine whether an *Apprendi* error occurred. *People v. Nitz*, 219 Ill. 2d 400, 416 (2006). In *Apprendi*, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. An *Apprendi* violation may occur where the defendant is given an enhanced sentence based on a fact that was not submitted to the jury, or where the jury failed to find that the sentence-enhancing factor existed beyond a reasonable doubt. See *People v. Jones*, 219 Ill. 2d 1, 35-36 (2006) ("fact that increased [defendant's] imprisonment, the age of the victim, was not alleged in the charging instrument and not submitted to the jury"); *People v. Thurow*, 203 Ill. 2d 352, 361 (2003). *Apprendi* errors present a question of law, and therefore we review this issue *de novo*. *People v. Hopkins*, 201 Ill. 2d 26, 36 (2002) (citing *People v. Fisher*, 184 Ill. 2d 441, 448 (1998)).

- 16 -

¶ 67    Here, defendant's armed robbery sentence includes a 15-year enhancement based on the fact that he "carrie[d] on or about his or her person or [was] otherwise armed with a firearm" at the time of the offense. 720 ILCS 5/18-2(a)(2) (West 2010); 720 ILCS 5/18-2(b) (West 2010) ("A violation of subsection [18-2](a)(2) is a Class X felony for which 15 years shall be added to the term of imprisonment imposed by the court."). Defendant argues that his extended sentence violates *Apprendi*, because the fact that he carried a firearm was not submitted to the jury. Defendant's *Apprendi* argument is based in part on the jury instructions we discussed in the previous section. Although defendant was charged with robbery while armed with a "firearm," the definitions instruction erroneously used the phrase "dangerous weapon," and the third clause of the issues instruction stated that the State had to prove "[t]hat the defendant carried on or about his person a dangerous weapon *or* was otherwise armed with a firearm at the time of the taking." (Emphasis added) Defendant asserts that the inaccurate definitions instruction and the disjunctive "or" in the issues instruction created ambiguity as to whether the jury convicted defendant based on his possession of a firearm or some other dangerous weapon. A guilty verdict based on these instructions, so defendant's argument goes, does not indicate that the jury considered and found that defendant was armed with a firearm. Defendant thus argues that his extended sentence is predicated on a fact that was not properly submitted to the jury.

¶ 68    Relying on *People v. Rodriguez*, 372 Ill. App. 3d 797, 802-03 (2007), the State contends that no *Apprendi* error occurred. In *Rodriguez*, the jury convicted the defendant of first degree murder, and the trial court imposed an enhanced sentence based on the defendant's use of a firearm. *Id.* at 798. The defendant challenged his sentence under *Apprendi*, arguing that the jury's general guilty verdict did not show that it found, beyond a reasonable doubt, that he was armed with a firearm when he committed the murder. *Id.* at 801. The court rejected the defendant's argument, holding that there was no *Apprendi* violation, because the instructions required the State to prove that defendant "performed the acts which caused the death of [the victim] *while armed with a firearm*." (Emphasis added.) *Id.* at 802. The *Rodriguez* court read this phrase in the jury instructions as incorporating the sentence-enhancing fact as a requirement for finding defendant guilty, necessarily reflecting the jury's finding that defendant was also armed with a firearm during the offense. *Id.* at 802-03. See also *Hopkins*, 201 Ill. 2d at 39 (holding that no *Apprendi* error occurred where the enhancement factor, the victim's old age, was included "as an element of the offense," making it "undisputed that the age of the victim was *** proved [to the jury] beyond a reasonable doubt").

¶ 69    The case at bar is distinguishable from *Rodriguez* and *Hopkins*. *Apprendi* requires that any fact other than a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum be (1) submitted to a jury, and (2) proved beyond a reasonable doubt. *People v. Green*, 225 Ill. 2d 612, 621 (2007) (citing *Apprendi*, 530 U.S. at 490). Here, the State proved beyond a reasonable doubt that defendant used a firearm during the offense. Indeed, this fact was uncontested at trial. However, this fact was not submitted to the jury as required under *Apprendi*. Unlike in *Rodriguez* and *Hopkins*, nothing in the jury instructions required the jury to find that defendant used a firearm during the armed robbery to sustain his

conviction. The definitions instruction omitted any reference to a firearm. At best, the issues instruction gave the jury the option of basing defendant's conviction on use of a firearm: "That the defendant carried on or about his person a dangerous weapon *or* was otherwise armed with a firearm at the time of the taking." (Emphasis added.) The disjunctive "or" allowed the jury to find defendant guilty based on possession of a dangerous weapon rather than a firearm. Thus, the fact that defendant carried a firearm during the armed robbery was not properly submitted to the jury. We therefore agree with defendant that an *Apprendi* error occurred.

¶ 70   Defendant forfeited this issue, but urges review under the plain-error doctrine. *People v. Nitz*, 219 Ill. 2d 400, 410 (2006) ("when a defendant has failed to object to an [*Apprendi*] error, plain-error analysis applies" (citing *Throw*, 203 Ill. 2d at 363). Defendant has not met either plain-error prong. As we discussed in our plain-error analysis above, the evidence here was not closely balanced. The State presented ample evidence that defendant committed the instant armed robbery and overwhelming evidence that he did so while armed with a firearm. As a result, defendant cannot satisfy the first prong. Defendant's argument also fails under the second prong. Our supreme court has held that *Apprendi* errors do not fall under the narrow category of established structural errors. See *People v. Crespo*, 203 Ill. 2d 335, 347 (2001) ("*Apprendi* violations are *not* structural error" (emphasis in original)); *Thurow*, 203 Ill. 2d at 365 (same); see also *Thompson*, 238 Ill. 2d at 613 ("In *Glasper*, this court equated the second prong of plain-error review with structural error ***."). The *Apprendi* error here was not a clear or obvious error so serious that it affected the fairness of defendant's trial and challenged the integrity of the judicial process. Accordingly, we reject defendant's argument.

¶ 71                                           DNA Indexing Fee

¶ 72   Relying on *People v. Marshall*, 242 Ill. 2d 285 (2011), defendant argues that the trial court erroneously imposed a $200 DNA indexing fee, where the Illinois State Police have previously collected and catalogued his DNA. To his brief, defendant attaches a document from the Illinois State Police confirming that his DNA was obtained on March 14, 2007, for a prior offense. The State concedes that error occurred. We agree. Accordingly, under *Marshall*, we vacate the $200 DNA indexing fee assessed by the trial court in the instant case.

¶ 73                                           CONCLUSION

¶ 74   We vacate defendant's aggravated unlawful restraint conviction, because it was carved from the same physical act as his armed robbery conviction. We also vacate the $200 DNA indexing fee assessed by the trial court. We otherwise affirm defendant's conviction and sentence.

¶ 75   Affirmed in part and vacated in part.